# Supplemental Declaration Exhibit 1

```
 1                                          Pages 1-124
 2                                          Exhibits 1-11
 3              UNITED STATES DISTRICT COURT
 4            FOR THE DISTRICT OF MASSACHUSETTS
 5              CASE NO. 1:17-CV-10922-DJC
 6  ***********************************************
 7  Ronald Hebert and Aime Denault on behalf of
 8  themselves and others similarly situated,
 9            Plaintiffs
10  vs.
11  Vantage Travel Service, Inc.
12  d/b/a Vantage Deluxe World Travel and
13  Vantage Adventures,
14            Defendants
15  ***********************************************
16              Deposition of Ronald Hebert
17              Wednesday, February 20, 2019
18     Law Offices of Smith Duggan Buell & Rufo, LLP
19              55 Old Bedford Road, Suite 300
20              Lincoln, Massachusetts 01734
21              ------Kristen C. Krakofsky------
22                      Court Reporter
23                         Esquire
24
25
```



```
 1                        APPEARANCES:
 2

 3   Counsel for the plaintiff:

 4       Nickless, Phillips and O'Connor
         James L. O'Connor, Jr.
 5       joconnor@npolegal.com
         625 Main Street
 6       Fitchburg, Massachusetts 01420
         Phone: (978) 342-4590
 7       Fax: (978) 343-6383

 8
     Counsel for the defendant:
 9
         Smith Duggan Buell & Rufo LLP
10       Robert C. Mueller, Esquire
         rob.mueller@smithduggan.com
11       55 Old Bedford Road, Suite 300
         Lincoln, Massachusetts 01773
12       Phone: (617) 228-4453
         Fax: (781) 259-1112
13

14

15

16

17

18

19

20

21

22

23

24

25
```



|    |                                                        |      |
|----|--------------------------------------------------------|------|
| 1  | INDEX PAGE                                             |      |
| 2  | Deposition of Ronald Hebert                            |      |
| 3  | Examination by                                         | Page |
| 4  | Mr. Mueller                                            | 4    |
| 5  |                                                        |      |
| 6  | EXHIBIT INDEX                                          |      |
| 7  | Exhibit 1                                              |      |
|    |     Answers to interrogatories     | 12   |
| 8  |                                                        |      |
|    | Exhibit 2                                              |      |
| 9  |     Passenger Ticket Contract      | 25   |
| 10 | Exhibit 3                                              |      |
|    |     Affidavit                      | 26   |
| 11 |                                                        |      |
|    | Exhibit 4                                              |      |
| 12 |     Vantage Tour Participation Agreement | 30 |
| 13 | Exhibit 5                                              |      |
|    |     Vantage itinerary              | 42   |
| 14 |                                                        |      |
|    | Exhibit 6                                              |      |
| 15 |     Distances by Bus, One Way      | 58   |
| 16 | Exhibit 7                                              |      |
|    |     Photographs                    | 84   |
| 17 |                                                        |      |
|    | Exhibit 8                                              |      |
| 18 |     Arrival and departure times    | 105  |
| 19 | Exhibit 9                                              |      |
|    |     Modified itinerary             | 107  |
| 20 |                                                        |      |
|    | Exhibit 10                                             |      |
| 21 |     Vienna Land Stay, July 18th to July 21st | 108 |
| 22 |                                                        |      |
|    | Exhibit 11                                             |      |
| 23 |     Letter from Roman Cangar from Vantage Travel | 112 |
| 24 |                                                        |      |
| 25 | (Exhibits retained by Mr. Mueller.)                    |      |



1                     PROCEEDINGS
2                      9:56 a.m.
3                    Ronald Hebert
4    having been satisfactorily identified by means of a
5    Louisiana driver's license, was duly sworn by the
6    notary public, examined, and testified as follows:
7                     EXAMINATION
8       BY MR. MUELLER:
9       Q.   Good morning.
10      A.   Good morning.
11      Q.   Can you state your name for the record,
12   please.
13      A.   Roland Michael Hebert.
14      Q.   Good morning, Mr. Hebert.  My name is
15   Robert Mueller.  I'm an attorney representing
16   Vantage Travel in your deposition.  I'll be asking
17   you some questions regarding the lawsuit you filed
18   in Massachusetts regarding a river cruise that you
19   went on in July of 2016.
20           Have you ever had your deposition taken
21   before?
22      A.   No.
23      Q.   Well, I will be asking you some questions
24   concerning your expenses in the case.  The court
25   reporter will be taking down my questions and your



1    Q.  She did not give you any contracts or
2 agreements directly?
3    A.  No.
4    Q.  Did your travel agent tell you to go online
5 and take a look at Vantage's website?
6    A.  No.
7    Q.  I believe Vantage has -- on its website,
8 there's a client portal where you can go in and see
9 what the status of your reservation is.
10   A.  Exactly.
11   Q.  Did you take advantage of that?
12   A.  I did.
13   Q.  What did that show?
14   A.  It just showed the -- what cruise we were
15 taking and what dates it was and whether we had
16 filled out the forms, you know, asking for personal
17 information on the clients that they're getting
18 ready to take on the tour.
19   Q.  Did that section of the website contain
20 links to download a brochure?
21   A.  The website that had the brochure you could
22 download?
23   Q.  Well, the website had the brochure you
24 could download.
25   A.  Right.



1  Q. But as you went into your own private area
2  of the website that had your booking information,
3  were there any links that said click here to
4  download the itinerary or the brochure or any
5  language like that?
6  A. I don't recall that, no.
7  MR. MUELLER: Could I have this marked
8  as Exhibit 2.
9  (Exhibit 2, Passenger Ticket Contract,
10  marked for identification.)
11  BY MR. MUELLER:
12  Q. Okay. Mr. Hebert, you have in front of you
13  a document marked Exhibit 2. It's from a
14  declaration which was filed in this case back in
15  June 2017. It's entitled "Passenger Ticket
16  Contract." I'm not going to ask you to read through
17  this word for word. But if you could just take a
18  look at this, my question to you is whether you have
19  seen this document before.
20  A. I have not. This was not on the website.
21  Q. So this was on not on the website. You do
22  not recall downloading anything that looked like
23  this?
24  A. No.
25  Q. And your travel agent did not provide



```
 1  something that looked like this to you?
 2       A.   No.
 3       Q.   Okay.  Is it possible that your travel
 4  agent had this document and just never gave it to
 5  you?
 6       A.   I couldn't answer that.  I would be
 7  surprised, though.  She is pretty efficient.
 8       Q.   And I take it that you never received
 9  anything that looked like Exhibit No. 2 prior to
10  boarding the River Voyager?
11       A.   No.
12            MR. MUELLER:  I'm like this marked as
13  Exhibit 3.
14            (Exhibit 3, affidavit, marked for
15  identification.)
16       BY MR. MUELLER:
17       Q.   Mr. Hebert, before you, marked as
18  Exhibit 3, is an affidavit you filed in this lawsuit
19  back on July 11, 2017, and it's concerning the
20  passenger ticket contract, which we marked as
21  Exhibit 2 earlier.
22            My question to you on this affidavit is in
23  paragraph 6 you state that Vantage never provided
24  the PTC -- the abbreviation for passenger ticket
25  contract -- to any other passenger prior to
```



1  embarkation or at any other time.
2      A.   Uh-huh.
3      Q.   How do you know that?
4      A.   Well, I know that I didn't receive it, and
5  neither of the other three people received it.  So I
6  can't speak for the 173 people.  I don't know if any
7  of them received it.
8      Q.   So you know that you did not receive it?
9      A.   Exactly.
10     Q.   And your wife did not receive it?
11     A.   Exactly.
12     Q.   How do you know that the other six members
13 of your group did not receive it?
14     A.   Well, we discuss the trip all the time and
15 look at all the documents that we've been provided,
16 and this was not one of them.  So, you know, I can
17 attest to eight of us not receiving it.  Now, what
18 happened to the other 160-something, I don't know.
19     Q.   Okay.  For the six that were in your group,
20 after the lawsuit had been filed and after this
21 passenger ticket contract came to light, did you
22 speak to the other six members of your group to ask
23 them whether they received the passenger ticket
24 contract?
25     A.   I don't recall ever receiving anything



1  about this, other than, you know, that I have not
2  reviewed the -- and did not receive -- I didn't
3  receive anything from Al Dore, I can tell you.
4      Q.   Granted that you did not receive anything
5  from him prior to the start of the trip, my question
6  to you is after the lawsuit was filed, Vantage filed
7  a motion, your attorney presumably told you about
8  the motion and had you produce this affidavit marked
9  as Exhibit No. 3 in which you state that you never
10 received the passenger ticket contract; correct?
11     A.   Exactly.
12     Q.   And you stated that you never received it
13 before the trip.  You did not receive a copy before
14 boarding the River Voyager.
15     A.   Yes.
16     Q.   We've been through that.
17          Now, did you -- when your attorney was
18 asking you to prepare this affidavit and sign it,
19 did you speak with the other six members of your
20 group to ask them whether they had received the
21 passenger ticket contract?
22          MR. O'CONNOR:  Just before you answer
23 the question, to the extent that answering the
24 question would require to you reveal communications
25 with myself, with Patrick Osborne, or anyone in my



1  office, I instruct you not to answer. Other than
2  that, you're free to answer.
3     A.  What was the question?
4     Q.  My question was when you were asked to
5  prepare this affidavit, you stated that you did not
6  receive the passenger ticket contract.
7         Did you get on the phone or talk to any of
8  the other six members of your group -- not your
9  attorneys, just the six members of the group -- and
10 ask them whether they had received this passenger
11 ticket contract?
12    A.  I really don't recall specifically that,
13 but we discussed what was happening from a legal
14 standpoint.
15        Now, for this -- I don't recall. But if
16 they would have received anything that I hadn't
17 received, they would have certainly passed it on.
18    Q.  But there was never any specific question
19 as to whether or not they had received it?
20    A.  No.
21    Q.  And as you stated, as for the members of
22 the -- all the other passengers who weren't in your
23 group of eight, you have no idea whether they
24 received anything or not?
25    A.  No.



1    Q.  Have you had any specifics conversations
2 with any of these other 160-some passengers about
3 whether they received this contract?
4         MR. O'CONNOR:  Again, to the extent
5 you can answer without revealing confidential
6 attorney-client communications, you can answer.
7    A.  I did not discuss it with any of the other
8 170-something.
9    Q.  Okay.
10        MR. MUELLER:  Exhibit 4.
11        (Exhibit 4, Vantage Tour Participation
12 Agreement, marked for identification.)
13   BY MR. MUELLER:
14   Q.  Mr. Hebert, before you marked as Exhibit
15 No. 4 is a document captioned "Vantage Tour
16 Participation Agreement."  Do you have that in front
17 of you?
18   A.  I do.
19   Q.  Prior to the departure on the trip, do you
20 recall receiving the document --
21   A.  That's part of the brochure.  Yes, I
22 received this.
23   Q.  And this document is marked PL28 through
24 PL31.  I'll represent that this was produced in
25 Plaintiff's production of documents.  There is a

1  number stamped on the bottom right corner there.
2      A.   Okay.  I don't recall the particular stamp.
3  I recall -- if this is the one that's on the Vantage
4  site, I definitely did -- you know, I got that when
5  I downloaded the brochure.
6      Q.   And that was before the departure of the
7  trip?
8      A.   It was.
9      Q.   Do you recall whether you downloaded the
10 brochure before you made your initial deposit?
11     A.   I really don't remember.  I would think I
12 did, yes.
13     Q.   And you did this -- you downloaded this on
14 your own computer?
15     A.   Right.
16     Q.   Your travel agent did not send you this
17 document?
18     A.   No.
19     Q.   Do you recall receiving any emails from
20 Vantage which contained this document?
21     A.   No.
22     Q.   Do you recall seeing a link to a tour
23 participation agreement in the client section of the
24 website?
25     A.   No.  I mean, it was part of the brochure.



1   So, I mean, if you got the brochure, you got this.
2       Q.   Did you actually read this document before
3   departure?
4       A.   I did.
5       Q.   Page 4 of the document, PL31, the left-hand
6   column down at the bottom references a Vantage
7   travel protection plan.  Do you see that?
8       A.   Uh-huh.
9       Q.   Did you purchase a Vantage protection plan
10  for this trip?
11      A.   I did not.
12      Q.   And your wife did not either?
13      A.   No.
14      Q.   Did any member of your group of eight
15  purchase it, as far as you know?
16      A.   No.
17      Q.   So none of your group of eight purchased
18  the Vantage protection plan?
19      A.   No.
20      Q.   Did you have any discussions with your
21  travel agent over this protection plan or any other
22  travel insurance?
23      A.   No.  Because, as I said, Beth handled all
24  of our cruises, and I never had taken out travel
25  insurance.

