# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONALD HEBERT and AIME DENAULT on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VANTAGE TRAVEL SERVICE, INC. d/b/a VANTAGE DELUXE WORLD TRAVEL and VANTAGE ADVENTURES,<br><br>Defendant. | Civil Action No. 17-10922-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                   **April 1, 2019**

## I.        Introduction

Named Plaintiffs Ronald Hebert and Aime Denault ("Named Plaintiffs") have filed this putative class action against Defendant Vantage Travel Service, Inc. d/b/a Vantage Deluxe World Travel and Vantage Adventures ("Vantage") alleging breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, breach of common law warranties, negligent misrepresentation and a violation of the Massachusetts Consumer Protection Act, Mass. Gen. L. c. 93A, §§ 2 and 9.  D. 1-1.  Named Plaintiffs have moved for class certification, D. 39, and moved to strike portions of Vantage's answer or, in the alternative, for partial summary judgment as to the same, D. 46.  Named Plaintiffs have now also filed a motion for leave to amend the complaint, D. 55.  For the reasons stated below, the Court ALLOWS Named Plaintiffs' motion

for class certification, D. 39, as to Class 1 and DENIES the motion as to Class 2.  The Court

DENIES Named Plaintiffs' motion to amend the complaint, D. 55,  and DENIES the motion to

strike or, in the alternative, for summary judgment without prejudice.  D. 46.

## II.    Standard of Review

### A.    <u>Class Certification</u>

A class action may be certified only if "(1) the class is so numerous that joinder of all

members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims

or defenses of the representative parties are typical of the claims or defenses of the class; and (4)

the representative parties will fairly and adequately protect the interests of the class."  Fed R. Civ.

P. 23(a); <u>see</u> <u>In re New Motor Vehicles Canadian Export Antitrust Litig.</u>, 522 F.3d 6, 18 (1st Cir.

2008).   Where, as here, Named Plaintiffs have moved to certify a class under Fed. R. Civ. P.

23(b)(3), the Court must also determine whether "questions of law or fact common to class

members predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for fairly and efficiently adjudicating the

controversy."  Fed. R. Civ. P. 23(b)(3); <u>see</u> <u>New Motor Vehicles</u>, 522 F.3d at 18.

"[T]he district court must undertake a 'rigorous analysis' to determine whether plaintiffs

me[e]t the four threshold requirements of Rule 23(a) (numerosity, commonality, typicality, and

adequacy of representation) and Rule 23(b)(3)'s two additional prerequisites."  <u>In re Nexium</u>

<u>Antitrust Litig.</u>, 777 F.3d 9, 17 (1st Cir. 2015) (quoting <u>Comcast Corp. v. Behrand</u>, 569 U.S. 27,

33 (2013)); <u>see</u> <u>Smilow v. Sw. Bell Mobile Sys.</u>, 323 F.3d 32, 38 (1st Cir. 2003).  Named Plaintiffs

bear the burden of proving that class certification is justified.  <u>Makuc v. Am. Honda Motor Co.,</u>

<u>Inc.</u>, 835 F.2d 389, 394 (1st Cir. 1987).   When "plaintiffs have made their initial showing,

defendants have the burden of producing sufficient evidence to rebut the plaintiff's showing."

<u>Nexium</u>, 777 F.3d at 27.

### B.    Leave to Amend

Fed. R. Civ. P. 15(a) "mandates that leave to amend is to be 'freely given when justice so requires' . . . unless the amendment 'would be futile, or reward, *inter alia*, undue or intended delay.'" Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004) (quoting Fed. R. Civ. P. 15(a)(2) and Resolution Trust Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994)).  Rule 15(a)'s "liberal amendment policy . . . does not mean that leave will be granted in all cases." Acosta-Mestre v. Hilton Int'l of P.R., 156 F.3d 49, 51 (1st Cir. 1998) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487, at 611 (2d ed. 1990)).

### C.    Summary Judgment

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A disputed fact is material if it has the potential to "affect the outcome of the suit under the applicable law." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)) (internal quotation marks omitted).  The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000).  The Court "constru[es] the record in the light most favorable to the non-movant and resolv[es] all reasonable inferences in that party's favor." Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2009).

### III.    Factual Background

The Court will not recite all facts previously considered in dismissing Vantage's motion to dismiss. See D. 25.  The facts that follow are relevant to the currently pending motions and, unless otherwise noted, are drawn from the operative complaint, D. 1-1, Vantage's previously filed

statements of material facts and Named Plaintiffs' response, D. 10; D. 18, and supporting documents.[1]

Vantage is a Massachusetts corporation that operates and sells international travel tours. D. 10 ¶¶ 1-3; D. 9 ¶¶ 3-4. In 2015, Named Plaintiffs purchased Vantage's "5 Star Luxury" river cruise to Austria, Germany and Hungary on *MS River Voyager* that was set to begin in July 2016. D. 1-1 ¶¶ 5-6; see D. 10 ¶ 9; D. 9 ¶ 9. The claims here concerns two Vantage river tour packages: (1) the "Majestic Rivers of Europe" tour, which promised a seventeen-day tour on the *MS River Voyager* commencing in Bonn, Germany on July 8, 2016; and (2) the "Highlights of the Danube" tour, an eleven-day river tour aboard *MS River Voyager* that was to begin in Nuremburg, Germany on July 15, 2016. D. 10 ¶ 9; D. 9 ¶ 9. Named Plaintiffs were among 168 passengers who booked one of the two Vantage cruises at issue. D. 40 at 2; D. 45-1 ¶ 6. According to Vantage's records, passengers paid a total of $1,136,310 for the tours. D. 45-1 ¶ 7. Upon booking the tours, Named Plaintiffs and putative class members received a Tour Participation Agreement that states, in relevant part, that "Vantage is not responsible for any losses or expenses due to delays or changes in schedules, overbooking or downgrading of accommodations, defaults by any third parties, including Suppliers, mechanical or other failure of airplanes or other means of transportation, or the failure of any transportation mechanism to arrive or depart on time." D. 45-2 at 4. The Tour Participation Agreement also includes the option to purchase the Vantage Travel Protection Plan, which covers, among other things, "cancellation or interruption of your trip due to . . . mechanical breakdown that causes complete cessation of services of your common carrier for at least 12 consecutive hours . . . ." D. 45-2 at 5. The maximum benefit amount for trip interruption or

---

[1] The Court notes that Named Plaintiffs have not filed a statement of material facts in support of the motion to strike or, in the alternative, for partial summary judgment. See D. 46.

cancellation under the plan is listed as "Trip Cost." Id. The Vantage Travel Protection Plan is underwritten by United States Fire Insurance Company and the Plan administrator is Trip Mate, Inc. Id.

On or about July 14, 2016, *MS River Voyager* was rendered unfit for navigation. D. 10 ¶ 13; D. 9 ¶ 11. Vantage alleges that *MS River Voyager* experienced a mechanical failure related to the ship's bow thruster. D. 10 ¶ 14; D. 9 ¶ 11. Named Plaintiffs (and other tour customers who purchased the Majestic Rivers of Europe or Highlights of the Danube tour packages) were transported by bus for the next eight days. D. 1-1 ¶ 7; D. 10 ¶ 15; D. 9 ¶ 11. Several trip highlights were cancelled or changed, including visits to specific cities and landmarks, excursions, accommodations and meals on the ship. D. 42 ¶¶ 5-23 (explaining that customers did not receive sightseeing opportunities or guided tours to various cities, were not provided meals as promised and instead received stipends or had dinners at hotels and the quality of the hotel accommodations were not comparable to the *MS River Voyager*); D. 43 ¶¶ 5-23 (same). On July 22, 2016, the final night of both cruises at issue, tour participants were permitted to board the *MS River Voyager* in Budapest, Hungary. D. 10 ¶ 16; D. 9 ¶ 11.

Following the tours, Vantage refused to provide full cash refunds to Named Plaintiffs and other tour customers. D. 1-1 ¶ 8. Vantage instead offered credit toward future travel and free cruises in November or December 2016, which were accepted by some tour customers. D. 40 at 10; D. 45-4 at 2-3.

## IV.    Procedural History

Named Plaintiffs instituted this action in Suffolk Superior Court on or about March 7, 2017. D. 1-3 at 2. Vantage removed the action to this Court on May 19, 2017. D. 1. Vantage initially moved to dismiss or, in the alternative, for summary judgment. D. 7. Named Plaintiffs filed a

cross-motion to strike portions of the declaration attached to Vantage's motion. D. 14 at 6-7. The Court denied both motions. D. 25.

Named Plaintiffs have now moved for class certification, D. 39, moved to strike portions of Vantage's answer or, in the alternative, for partial summary judgment, D. 46, and moved to amend the complaint, D. 55. The Court heard the parties on the pending motions and took these matters under advisement. D. 65.

## V. Discussion

### A. <u>Class Certification</u>

Named Plaintiffs have proposed the following classes for certification as to their claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, breach of common law warranties and Chapter 93A violation in the operative complaint.[2] D. 39 at 1.

> (1) All persons who purchased from Vantage either the July 2016 "Majestic Rivers of Europe" tour, or the July 2016 "Highlights of the Danube River" tour (hereinafter, "Class 1").
>
> (2) All persons who purchased a Travel Protection Plan from Vantage on or after March 10, 2011 (hereinafter, "Class 2").

<u>Id.</u> Plaintiffs must meet all the requirements under Rule 23(a) and under Rule 23(b)(1), (2) or (3) to prevail on their class certification motion. <u>See</u> <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 614 (1997).

#### 1. *Class 1*

##### a) <u>Ascertainability</u>

---

[2] Named Plaintiffs have not moved for class certification with respect to their negligent misrepresentation claim. <u>See</u> D. 39 at 1.

Before applying the Rule 23(a) and (b) analysis, the Court must determine "whether the scope of the class . . . is appropriate, *i.e.*, whether it is administratively feasible. Kent v. SunAmerica Life Ins. Co., 190 F.R.D. 271, 278 (D. Mass. 2000) (citing 7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1760, 581 (2d ed. 1972)). A class must be determinable by "stable and objective factors" at the outset of a case, id.; not every class member must be identified, but the class must be sufficiently ascertainable to permit a court to "decide and declare who will receive notice, who will share in any recovery, and who will be bound by the judgment." Id. (citing Crosby v. Soc. Sec. Admin. of the U.S., 796 F.2d 576, 580 (1st Cir. 1986)). The definition for Class 1 identifies members by their purchase of a specific Vantage tour in July 2016. The Court, therefore, concludes that Named Plaintiffs have provided objective criteria for defining the class and have satisfied their initial burden of showing ascertainability.

b)      Rule 23(a) Requirements

*(1)    Numerosity*

The Court must now determine whether "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No minimum number of plaintiffs is required . . . but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." García-Rubiera v. Calderón, 570 F.3d 443, 460 (1st Cir. 2009) (quoting Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001)); see In re Relafen Antitrust Litig., 218 F.R.D. 337, 342 (D. Mass. 2003). Named Plaintiffs contend they have met their burden with respect to numerosity because the proposed class includes 168 passengers who purchased either the "Majestic Rivers of Europe" tour or the "Highlights of the Danube River" tour. D. 45-1 at 3; D. 45-1 ¶ 6. Vantage does not dispute this contention. See D. 57 at 5. The Court concludes that putative Class 1 satisfies the numerosity requirement.

## (2)  *Commonality*

Named Plaintiffs also must demonstrate that "there are questions of law or fact common" to Class 1.  Fed. R. Civ. P. 23(a)(2).  Commonality is satisfied where the claims at issue depend upon a "common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Wal–Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).  Named Plaintiffs assert that Class 1 shares common questions of law and fact, including whether Vantage breached contractual obligations and warranties by failing to deliver the "luxury" cruise advertised to its customers.  D. 40 at 21.  Vantage appears to contend that proposed Class 1 lacks commonality for the same reasons it cannot satisfy the predominance inquiry set forth in Rule 23(b)(3).  See D. 57 at 5-6.  However, the "predominance criterion is far more demanding . . . than the commonality requirement."  New Motor Vehicles, 522 F.3d at 20 (quoting Amchem, 521 U.S. at 624).  The common questions among Class 1, including whether Vantage breached contracts with its passengers by failing to deliver a luxury cruise experience and by failing to provide requested compensation, overcome the commonality requirement's "low bar."  New Motor Vehicles, 522 F.3d at 19.  Named Plaintiffs have established commonality as to Class 1.

## (3)  *Typicality*

Named Plaintiffs must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The representative plaintiff satisfies the typicality requirement when its injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff's claims and those of the class are based on the same legal theory."  In re Credit Suisse–AOL Sec. Litig., 253 F.R.D. 17, 23 (D. Mass. 2008) (citation omitted).  Named Plaintiffs contend that their claims are typical of the class because they, like all proposed class members, "were subjected to Vantage's deceptive claim that it owned

and operated the *MS River Voyager*;" "purchased their tours from Vantage;" "were passengers when the *MS River Voyager* was declared disabled;" "were bused from the ship to the scheduled destinations for five days;" and were "housed in the same hotel for four days." D. 40 at 22.

Vantage contends that Named Plaintiffs, who booked the seventeen-day "Majestic Rivers of Europe" tour, are not sufficiently similar to those members of the proposed class who booked the shorter "Highlights of Danube" tour. D. 57 at 6. Specifically, Named Plaintiffs enjoyed a week of their tour without incident whereas Vantage customers who booked the shorter tour had their trip altered by mechanical issues at the outset. Id. at 6. Although mechanical issues arose at different junctures in the tours, all passengers aboard *MS River Voyager* during the relevant time period were forced to disembark from the vessel, rode buses in lieu of enjoying a luxury cruise and received the same substitute accommodations irrespective of which tour they purchased. The alleged conduct and legal theories underlying Named Plaintiffs' claims, *e.g.*, Vantage breached a duty owed to customers by failing to provide the tour experiences customers had purchased, are typical of all members of proposed Class 1. The Court, therefore, finds that the typicality requirement is satisfied as to Class 1.

### (4)     *Adequacy*

Pursuant to Rule 23(a)(4), the Court considers whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor requires Named Plaintiffs to establish an absence of potential conflict and an assurance of vigorous prosecution. See Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985). The class representatives must be part of the class, possess the same interest and suffer the same injury as class members. See Amchem, 521 U.S. at 625-26. "[P]erfect symmetry of interest is not required and not every discrepancy among the interests of class members renders a putative class action

untenable." Matamoros v. Starbucks Corp., 699 F.3d 129, 138 (1st Cir. 2012). Rather, the inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent," Amchem, 521 U.S. at 625, and focuses on conflicts that are "fundamental to the suit and that go to the heart of the litigation," Matamoros, 699 F.3d at 138 (quoting 1 William B. Rubenstein, Newberg on Class Actions § 3:58 (5th ed. 2012)). "[S]peculative conflict should be disregarded at the class certification stage." Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd., 247 F.R.D. 253, 265 (D. Mass. 2008) (citation omitted).

The Court must determine "first, whether any potential conflicts exist between the named plaintiffs and the prospective class members, and, second, whether the named plaintiffs and their counsel will prosecute their case vigorously." Vargas v. Spirit Delivery & Distrib. Servs., 245 F. Supp. 3d 268, 288 (D. Mass. 2017) (internal quotation marks and citations omitted). Named Plaintiffs argue that they fairly represent Class 1 because they experienced the same tour disruptions as other Vantage customers in proposed Class 1 after *MS River Voyager*'s mechanical failure and they similarly did not receive all the benefits of the tour they purchased. D. 40 at 23. Vantage does not specifically address the adequacy inquiry in its papers. However, even if Vantage had argued that Named Plaintiffs are inadequate class representatives because their tour experience differed from Vantage customers who purchased the shorter tour package, that contention is inapposite. As the First Circuit has explained, "to forestall class certification the intra-class conflict must be so substantial as to overbalance the common interests of the class members as a whole." Matamoros, 699 F.3d at 138. Given that *MS River Voyager*'s malfunction and Vantage's blanket refusal to provide full cash refunds or other requested compensation impacted all tour participants, the interests of Named Plaintiffs and members of proposed Class 1 are sufficiently aligned. Any intra-class distinctions are not fundamental to the resolution of the

instant dispute.  As to the adequacy of Named Plaintiffs' counsel, the Court is satisfied that class

counsel, which has experience representing plaintiffs in class actions in this district, <u>see</u> D. 40 at

23, will vigorously advocate on behalf of proposed Class 1 members.   Accordingly, the Court

concludes that Named Plaintiffs have satisfied their burden of proving adequacy under Rule

23(a)(4).

c)    <u>Rule 23(b)(3) Requirements</u>

*(1)    Predominance*

Rule 23(b)(3) requires that "the questions of law or fact common to class members

predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for fairly and effectively adjudicating the controversy."  Fed.

R. Civ. P. 23(b)(3).  The focus of the predominance inquiry is "whether proposed classes are

sufficiently cohesive to warrant adjudication by representation." <u>Amchem</u>, 521 U.S. at 623.  In

conducting the predominance analysis, "a district court must formulate some prediction as to how

specific issues will play out in order to determine whether common or individual issues

predominate in a given case." <u>Waste Mgmt. Holdings, Inc. v. Mowbray</u>, 208 F.3d 288, 298 (1st

Cir. 2000).  In class actions, "common issues do not predominate if the fact of [liability] and

[damages] cannot be established through common proof." <u>New Motor Vehicles</u>, 522 F.3d at 20.

As compared to the commonality requirement of Rule 23(a), "the predominance criterion is far

more demanding." <u>Amchem</u>, 521 U.S. at 624.

Although Named Plaintiffs' motion papers do not distinguish between prospective Class 1

and Class 2 with respect to the predominance requirement, Named Plaintiffs appear to assert that

questions of fact and law predominate over individual questions as to Class 1 because all members

received a bus tour for eight days as opposed to the luxury cruise they purchased; Vantage misled

and deceived class members when it failed to identify the owner and operator of the *MS River*

11

*Voyager* and failed to disclose terms of its cancellation or refund policy; and Vantage misled and deceived class members when it failed to offer their choice of (a) a cash refund equal to the fair market value of the undelivered travel services, (b) a substitution travel service of equal or greater fair market value, or (c) a substitute travel service of lower fair market value and a cash refund equal to the difference in the fair market values of the purchased and the substitute travel services. D. 40 at 25. According to Named Plaintiffs, the fact that each class member entered the same Tour Participation Agreement with Vantage also weighs in favor of predominance. Id.; see D. 45-2 (setting forth conditions of Tour Participation Agreement).

Vantage contends that predominance has not been established for at least two reasons. First, Vantage asserts that members of Class 1 who booked the longer "Majestic Rivers of Europe" did not share the same experience as customers who purchased the shorter "Highlights of the Danube" tour. Although Class 1 is comprised of Vantage customers who were impacted by *MS River Voyager*'s mechanical failures after a week of problem-free travel and customers who were impacted at the outset, Vantage has failed to explain how this temporal distinction predominates over common issues, especially given that all passengers entered the same Vantage Tour Participation Agreement and shared the same substitute accommodations and tour experience following the course of conduct giving rise to this lawsuit, *i.e.*, *MS River Voyage*r's malfunction.

Second, Vantage argues that differences in how Class 1 members were compensated after the tour will overshadow any common issues of law or fact. For example, sixty-eight passengers that fall within the proposed Class 1 definition accepted a free cruise or Future Trip Credits ("FTC") of $500 a person following the tours at issue. D. 57 at 7-8; D. 45-4 at 2-3. The remaining passengers, including Named Plaintiffs, did not. Id. Vantage asserts that "[d]eterminations must be made as to which passengers utilized the FTC and whether this constituted an accord and

satisfaction such that these passengers do not have viable claims against Vantage Travel." D. 57 at 8. Vantage's arguments raise concerns regarding "the proper treatment of uninjured class members at the class certification stage." In re Asacol Antitrust Litig., 907 F.3d 42, 51 (1st Cir. 2018). Proof of injury is also a required element of the breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, breach of common law warranties and Chapter 93A claims for which Named Plaintiffs seek class certification. Class 1 includes Vantage customers who accepted free cruise and FTC offerings after completing their tours. Vantage, in essence, contends that these passengers have already been compensated for any alleged injuries. Named Plaintiffs' motion papers suggests that Vantage should have provided full cash refunds, substitution travel service of equal or greater value to the undelivered travel service or a combination of the latter to fully compensate for customers' injuries. The First Circuit has explained that "[t]he aim of the predominance inquiry is to test whether any dissimilarity among the claims of class members can be dealt with in a manner that is not 'inefficient or unfair.'" Id. (quoting Amgen, 568 U.S. at 469). In Asacol, the First Circuit acknowledged that "a class may be certified notwithstanding the need to adjudicate individual issues so along as the proposed adjudication will be both 'administratively feasible' and 'protective of defendants' Seventh Amendment and due process rights.'" Id. at 52 (quoting Nexium, 777 F.3d at 19). Here, it is administratively feasible to identify putative class members who accepted an FTC or free cruise from documents produced by Vantage, including a spreadsheet that lists all customers from both July 2016 tours and which indicates whether customers accepted any compensation, D. 45-4, and the affidavit attesting to the authenticity of the same, D. 45 ¶ 4. Of the putative class members who accepted some form of compensation following the July 2016 tours, it is possible to discern whether such members should be removed from Class 1 through a manageable, individualized

process at or before trial, including deposition testimony or sworn affidavits regarding the value, nature and adequacy of the compensation offered and accepted by these potential class members. Cf. Asacol, 907 F.3d at 53 (concluding that individual issues predominated because "any class member may be uninjured, and there are apparently thousands who in fact suffered no injury" such that adjudication of individual issues would be unmanageable).

Finally, Vantage opines that class members may have different subjective valuations of the substitute food, travel and living arrangements they were offered after *MS River Voyager* suffered a mechanical breakdown, which impacted the tours at issue at different junctures. According to Vantage, there must be an individualized assessment of how the breakdown impacted each proposed class members' enjoyment of the tour to ascertain damages. D. 57 at 8-9. Named Plaintiffs have provided a sworn affidavit indicating that differences in putative class members' experiences before and after *MS River Voyager*'s malfunction, including cabin-type, excursions purchased and airfare, can be accounted for in an aggregate damages calculation. D. 41 at 3. Regardless, the "need for individual damage determinations . . . does not alone defeat predominance." DaSilva v. Border Transfer of MA, Inc., 296 F. Supp. 3d 389, 406 (D. Mass. 2017); see In re Solodyn (Minocycline Hydrochloride) Antitrust Litig., No. CV 14-MD-02503, 2017 WL 4621777, at *18 (D. Mass. Oct. 16, 2017) (explaining that "[a]lthough the predominance inquiry requires plaintiffs to show they will be able to provide a damages model on a class-wide basis . . . it is well-established that [t]he individuation of damages in consumer class actions is rarely determinative under Rule 23(b)(3)) (internal quotation marks and citations omitted). The Court declines to deny class certification on this basis as to Class 1.

*(2)    Superiority*

The Court considers four factors within the superiority inquiry:

> (A) the class members' interests in individually controlling the prosecution or
> defense of separate actions; (B) the extent and nature of any litigation concerning
> the controversy already begun by or against class members; (C) the desirability or
> undesirability of concentrating the litigation of the claims in the particular forum;
> and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). The superiority inquiry thus ensures that litigation by class action will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Amchem, 521 U.S. at 615 (alteration in original) (quoting advisory committee's note on Fed. R. Civ. P. 23). Vantage has not provided any arguments regarding whether Named Plaintiffs satisfy the superiority requirement. The Court, however, concludes that fairness and efficiency support class certification where, as here, Class 1 includes 168 members with claims arising from the same course of conduct. The Court, therefore, concludes that pursuant to Rule 23(a) and Rule 23(b)(3) class certification is appropriate as to Class 1.

2.      *Class 2*

The Court concludes that Named Plaintiffs have not satisfied the requirements set forth in Rule 23(a) as to Class 2. First, with respect to numerosity, Named Plaintiffs have identified one putative class member, Suzanne Dutton ("Dutton"), who purportedly purchased travel protection insurance from Vantage. D. 44 ¶ 3 (stating in a declaration that Dutton "paid Vantage $979 for TRAVEL PROTECTION INSURANCE"). Named Plaintiffs, however, did not indicate when the putative class member purchased the insurance plan or whether the plan included the same terms as the Vantage Travel Protection Plan described in the Tour Participation Agreement. Id. Assuming *arguendo* that Dutton falls within the Class 2 definition, Named Plaintiffs still cannot satisfy the numerosity requirement. Without more, Named Plaintiffs' assertion that they can "reasonably establish[] that at least 40 passengers purchased the Travel Protection Plan," D. 63 at

3, falls short of "affirmatively demonstrat[ing] . . . compliance with [Rule 23(a)]," <u>Dukes</u>, 564 U.S. at 350.

Second, as to commonality, Named Plaintiffs have not established that any common questions of law or fact exist among proposed Class 2, which is comprised of everyone who purchased a Vantage Travel Protection Plan since March 10, 2011, regardless of whether they experienced any issues during a Vantage tour. D. 57 at 10. Given that the Vantage Travel Protection Plan covers myriad unforeseen circumstances that may occur prior to or during a tour and offers different remedies based on the nature of the same, <u>see</u> D. 45-2 at 5, Named Plaintiffs have not satisfied their burden of establishing commonality. Indeed, the operative complaint, D. 1-1, is silent as to possible claims arising under the Travel Protection Plan. Third, because Named Plaintiffs do not assert that they purchased the Travel Protection Plan, D. 42 (declaration of Named Plaintiff Aime Denault); D. 43 (declaration of Named Plaintiff Ronald Hebert), Named Plaintiffs cannot establish commonality or adequacy as it pertains to their representation of a putative class that purchased the Travel Protection Plan. Because there is no basis for determining common liability or questions of fact for the members of proposed Class 2, Named Plaintiffs have failed to satisfy the predominance inquiry and the Court need not reach the other factors under Rule 23(a) or Rule 23(b)(3). The Court, therefore, denies Named Plaintiffs' motion to certify Class 2 without prejudice.

### B. **Plaintiff's Motion to Amend the Complaint**

Named Plaintiffs have also moved to amend the operative complaint to add Henry Lewis ("Lewis") as a defendant for engaging in unfair and deceptive practices in violation of Mass. Gen. L. c. 93A, §§ 2 and 9 (Count VI of the proposed amended complaint). D. 56-1. The proposed amended complaint alleges that Lewis is the president, sole director and owner of Vantage and

Vantage Services, GmbH (an affiliate of Vantage that purportedly owns and operates *MS River Voyager*). D. 56-1 ¶¶ 7-13, 23. In his capacity as owner of Vantage and Vantage Services, GmbH ("Vantage Services"), Lewis allegedly failed to comply with regulations concerning the sale of travel services in violation of Chapter 93A, including by failing to disclose the condition of *MS River Voyager*, failing to adequately disclose a purported lack of an emergency or contingency plan should *MS River Voyager* malfunction during a tour, failing to disclose *MS River Voyager*'s owner and operator, failing to conspicuously disclose terms of contracts associated with the relevant tour packages and, among other things, failing to provide full cash refunds to tour customers. D. 56-1 ¶¶ 71-79. Named Plaintiffs also seek to add Lewis as a "reach-and-apply" defendant to the extent Vantage may have damages claims against Lewis for breach of fiduciary duty, negligence, gross negligence, contribution, indemnification, unjust enrichment and breach of contract pursuant to Mass. Gen. L. c. 214, § 3 or otherwise (Count VII of proposed amended complaint). D. 56-1 ¶¶ 80-81.

As an initial matter, the proposed amended complaint does not allege that Lewis directly engaged in unfair and deceptive conduct in connection with the Vantage tours at issue. Instead, Named Plaintiffs allege that Lewis is liable due to his ownership and control over Vantage and Vantage Services, the entities that allegedly caused their injuries. See D. 56-1 ¶¶ 71-79. For support, Named Plaintiffs cite My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614 (1968), which states that a "person controlling a corporation and directing, or participating actively in . . . its operations may become subject to civil or criminal liability on the principles of agency or of causation." My Bread Baking, 353 Mass. at 618. Named Plaintiffs, therefore, advance a corporate veil piercing theory of liability pursuant to which Lewis may be liable under certain circumstances for the acts of the corporations he owns or controls. Under Massachusetts law, the

"corporate veil may be pierced only with reluctance and in extreme circumstances when compelled by reasons of equity." Lothrop v. N. Am. Air Charter, Inc., 95 F. Supp. 3d 90, 100 (D. Mass. 2015). Disregard of corporate separateness is permitted where two factors are met: (1) "when there is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control, in the activities of another and there is some fraudulent or injurious consequence of the intercorporate relationship," or (2) "when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting." My Bread Baking, 353 Mass. at 619. To determine whether to pierce the corporate veil, courts consider:

> (1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.

Attorney General v. M.C.K., Inc., 432 Mass. 546, 555 n.19 (2000) (citing Pepsi–Cola Metro. Bottling Co. v. Checkers, Inc., 754 F.2d 10, 14–16 (1st Cir.1985)). "The factors are weighed, not counted." George Hyman Constr. Co. v. Gateman, 16 F. Supp. 2d 129, 158 (D. Mass. 1998). Moreover, evidence or allegations of common ownership and management, alone, are insufficient. See My Bread Baking, 353 Mass. at 619 (explaining that "common ownership of the stock of two or more corporations together with common management, standing alone, will not give rise to liability").

Other than conclusory allegations regarding Lewis's ownership and control of the corporations at issue, the proposed amended complaint is devoid of specific facts that support

piercing the corporate veil as it pertains to Lewis. Named Plaintiffs, for example, have not alleged that Lewis owned or exercised pervasive control over Vantage and Vantage Services at the same time or during any period of time relevant to their claims nor does the proposed amended complaint include any allegations germane to the other factors in the veil piercing analysis. The proposed amended complaint lists acts generally conducted by "Defendants" and includes the unsupported legal assertion that Lewis acted "willfully and knowingly" with respect to the same. See D. 56-1 ¶¶ 71-74. In assessing the futility of the amended complaint, "the district court must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)," Jenkins v. Bos. Hous. Court, No. CV 16-11548-PBS, 2018 WL 6001019, at *2 (D. Mass. Nov. 15, 2018) (internal quotation marks and citations omitted), and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," id. at *3. As currently alleged, the proposed amended complaint contains no plausible basis for adding Lewis as a defendant. Named Plaintiffs have similarly failed to include factual allegations (as opposed to legal conclusions) in support of their attempt to add Lewis to the instant action as a "reach-and-apply" defendant. Given Named Plaintiffs' failure to state a plausible claim against Lewis, the Court concludes that the proposed amended complaint is futile. In light of this ruling, the Court does not address Vantage's other arguments in support of denying Named Plaintiffs' motion to amend the complaint.

C.    **Motion to Strike or, in the Alternative, Motion for Partial Summary Judgment**

Named Plaintiffs also move to strike or, in the alternative, have moved for summary judgment as to certain affirmative defenses alleged in Vantage's answer. D. 46. Specifically, Named Plaintiffs seek to dismiss Vantage's improper forum and forum non conveniens affirmative defenses, as well as the Notice of Determination of International Treaty/Foreign Law ("Notice of Determination") pursuant to Fed. R. Civ. P. 44.1 in Vantage's answer to the operative complaint.

19

Id. As support for these affirmative defenses and the Notice of Determination, Vantage maintains that Named Plaintiffs entered a valid and enforceable forum selection clause designating the courts of England and Wales as the proper forum for the instant dispute. D. 28 at 6-7, 9. Although Vantage contends the forum selection clause is contained in a document called the Passenger Ticket Contract ("PTC"), the answer does not indicate (and Named Plaintiffs have not learned through the course of discovery to date) when Vantage customers received the PTC, the manner in which it was given and which customers received it. D. 47 at 3-6. Named Plaintiffs assert that they will be prejudiced if the Court does not strike Vantage's affirmative defenses or the Notice of Determination prior to the close of discovery. Vantage, on the other hand, contends that the investigation into how the PTC was communicated and delivered to passengers is ongoing and, as a result, Named Plaintiffs' motion is premature. The Court agrees. Named Plaintiffs have not explained how they are unduly prejudiced by ongoing discovery, especially when the discovery deadline was extended to May 3, 2019 at both parties' request. See D. 68.[3] The Court, therefore, denies without prejudice Named Plaintiffs' motion to strike or, in the alternative, for summary judgment as to Vantage's affirmative defenses and the Notice of Determination.

---

[3] On March 13, 2019, Named Plaintiffs moved to supplement the record in support of their motion to strike or, in the alternative, for summary judgment to include an excerpt of testimony from Named Plaintiff Hebert's deposition on February 20, 2019. D. 71. The deposition testimony at issue primarily concerns whether Hebert recalled receiving the PTC that purportedly included a forum selection clause. D. 72 at 4-5 (including excerpt from deposition testimony in which Hebert explains that he did not recall seeing the PTC on Vantage's website and he did not receive the same from his travel agent). Hebert stated during his deposition, however, that he did not "recall specifically" asking whether any members of his tour group received the PTC, D. 74-1 at 10-11, nor did he discuss the PTC with other putative class members, including "170-something" passengers on the Vantage cruise at issue, D. 74-1 at 11-12. Without more, Hebert's testimony does not compel the Court to resolve the issue concerning the PTC (and, by extension, the forum selection clause) on the present record or before the close of fact discovery.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Named Plaintiffs' motion for class certification as to Class 1 and DENIES the motion as to Class 2. D. 39. The Court DENIES Named Plaintiffs' motion to amend the complaint, D. 55, and DENIES the motion to strike or, in the alternative, for summary judgment, D. 46, without prejudice.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge