_____

|                                                    |     |                         |
|----------------------------------------------------|-----|-------------------------|
| **RONALD HEBERT and** **AIME DENAULT on behalf of** **themselves and others similarly situated,** | ) ) ) ) ) ) |                         |
| **Plaintiffs,**                                    | ) ) |                         |
| **v.**                                             | ) ) ) | **Case No. 17-cv-10922-DJC** |
| **VANTAGE TRAVEL SERVICE, INC.** **d/b/a VANTAGE DELUXE WORLD** **TRAVEL and VANTAGE ADVENTURES,** | ) ) ) ) |                         |
| **Defendant.**                                     | ) ) ) ) |                         |

_____

## MEMORANDUM AND ORDER

CASPER, J.                                                                    March 12, 2020

## I.      Introduction

Plaintiffs Ronald Hebert and Aime Denault, suing on behalf of themselves and a class of others similarly situated (collectively, "Plaintiffs"), filed suit against Defendant Vantage Travel Service, Inc. d/b/a Vantage Deluxe World Travel and Vantage Adventures ("Vantage Travel") alleging breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, breach of common law warranties, negligent misrepresentation and a violation of the Massachusetts Consumer Protection Act, Mass. Gen. L. c. 93A, §§ 2 and 9, related to river cruise travel packages that Plaintiffs purchased from Vantage. D. 1-1. Plaintiffs now move for summary judgment as to liability. D. 100. Vantage Travel moves for summary judgment as to all claims. D. 104. For the reasons stated below, the Court DENIES Plaintiffs' summary judgment motion as

to all counts, D. 100, and ALLOWS IN PART and DENIES IN PART Vantage Travel's summary judgment motion. D. 104.

## II.     Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial. Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III.    Factual Background

The following facts are drawn from Plaintiffs' statement of material facts, D. 102, Vantage Travel's statement of material facts, D. 106, Plaintiffs' response to Vantage Travel's statement of material facts, D. 118, Vantage Travel's response to Plaintiffs' statement of material facts, D. 121, and other supporting documents and are undisputed unless otherwise noted.

Plaintiffs were participants on river cruise tours they booked through Vantage Travel. D. 106 ¶ 1; D. 118 ¶ 1. Plaintiffs booked either (1) a seventeen-day/sixteen-night "Majestic Rivers of Europe" tour that boarded the *MS River Voyager* cruise ship in Bonn, Germany on July 8, 2016

or (2) an eleven-day/ten-night "Highlights of the Danube" tour that was scheduled to board the *MS River Voyager* in Nuremburg, Germany on July 15, 2016.  Id.

A.    **Vantage's River Cruise Advertising**

In brochures advertising the tours, Vantage Travel referred to the *MS River Voyager* as "Vantage's" or "our" vessel.  D. 106 ¶ 6; D. 118 ¶ 6.  Vantage Travel contends that this advertising did not specifically identify "Vantage Travel Service, Inc." as the entity that directly owns the *MS River Voyager*.  D. 106 ¶ 6.  Plaintiffs counter that Vantage Travel provided a tour participation agreement ("TPA") to participants that defined "Vantage" as "Vantage Travel Service, Inc. d/b/a Vantage Deluxe World Travel (hereinafter Vantage)."  D. 118 ¶ 6.  Vantage Travel claims that the *MS River Voyager* is owned by Vantage Services GmbH and HRL River Voyager GmbH.  D. 106 ¶ 7.  Vantage Travel advertised the *MS River* Voyager as a "six-star river vessel" and advertised that passengers would have access to certain amenities on the vessel.  D. 102 ¶¶ 14-15; D. 121 ¶¶ 14-15.  Vantage Travel also advertised that river cruise participants would "unpack just once" and that participants "would find [themselves] right in the center of town, just a stroll away from major cities."  D. 102 ¶ 16; D. 121 ¶ 16.

B.    **The Tour Participation Agreement**

At the time of booking, Vantage Travel gave the TPA that governed the terms of their tour arrangements to Plaintiffs via email or regular mail.  D. 106 ¶¶ 3-4; D. 118 ¶¶ 3-4.  The TPA was also available via an online portal that passengers used to access information about their trip.  D. 106 ¶ 4; D. 118 ¶ 4.  The TPA includes a provision (the "Disclaimer Provision") that reads, in relevant part, as follows:

**Responsibilities & Liability**
\*\*\*
        The responsibility of Vantage . . . is strictly limited. As a tour operator, Vantage organizes, promotes, and sells tour programs consisting of certain travel

3

services, including surface, air and water transportation, sightseeing excursions, and cruise/hotel accommodations, that Vantage purchases or reserves from various suppliers (collectively, "Suppliers"). Vantage does not own or operate any of these Suppliers. The Suppliers providing travel services for Vantage's tour programs are independent contractors and are not agents or employees of Vantage. As such, Vantage is not responsible for direct, indirect, consequential, or incidental damage, injury, loss, accident, delay, or irregularity of any kind occasioned by reason of any act or omission beyond its control, including, without limitation, any negligent or willful act or failure to act of, or breach of contract by, any Supplier or any other third party.

\*\*\*

Without limiting the foregoing, Vantage is not responsible for any losses or expenses due to delays or changes in schedules, overbooking or downgrading of accommodations, defaults by any third parties, including Suppliers, mechanical or other failure of airplanes or other means of transportation, or the failure of any transportation mechanism to arrive or depart on time. Vantage is not responsible for acts of God or force majeure events, sanitation problems, lack of medical care, sickness, weather conditions, strikes and other labor activities, acts of terrorism, acts of war . . . quarantines, embargoes, blockades, criminal activity, or other act of event beyond the direct control of Vantage.

We reserve the right to modify tour itineraries and substitute hotels and accommodations without liability to Vantage. Included features may not be available for all departures. If a vessel is not able to complete the scheduled itinerary due to low water, high water, mechanical breakdown, or other reason, we reserve the right to modify the itinerary, which right shall include the use of hotels and motor coaches where necessary.

D. 123 ¶ 6; D. 107-2 at 16. According to Vantage Travel, the TPA "is a document that's issued to every single passenger after they book on one of our trips. It's sent out to them outlining the terms and conditions . . . cancellation fees, responsibilities, all of the components." D. 102 ¶ 9; D. 121 at 16. Plaintiffs do not dispute that they received the TPA. D. 106 ¶ 5; D. 118 ¶ 5.

### C. The *MS River Voyager* Suffers Mechanical Failure

On or about July 14, 2016, approximately one week into the "Majestic Rivers of Europe" cruise, the *MS River Voyager* suffered a mechanical failure while it was docked near Kitzingen, Germany. D. 106 ¶ 9; D. 118 ¶ 9. The mechanical failure rendered the *MS River Voyager* unable to carry passengers for five days while repairs were being made. D. 102 ¶ 20; D. 121 ¶ 20. Vantage

4

Travel claims that a malfunctioning bow thruster engine caused the mechanical failure following improper repairs by an engineer. D. 106 ¶¶ 10-11. Plaintiffs dispute the cause of the mechanical failure in the absence of expert testimony. D. 118 ¶¶ 10-11. Vantage Travel maintains that an independent third-party ship management company, River Advice AG, was contracted to provide the crew for the *MS River Voyager*, including engineers who would have undertaken repairs. D. 106 ¶¶ 14-16. Plaintiffs also dispute this fact, arguing that Vantage Travel has failed to produce a contract with River Advice AG. D. 118 ¶ 14.

## D. Changes to the River Cruises Booked by Plaintiffs

During the five days that repairs were being made, tour participants remained on the *MS River Voyager* docked in Kitzingen overnight. D. 102 ¶ 20; D. 121 ¶ 20. Instead of boarding the *MS River Voyager* in Nuremberg as originally planned, participants on the "Highlights of the Danube" cruise met the vessel where it was docked. D. 106 ¶ 18, D. 118 ¶ 18. Instead of the planned cruise, participants of both tours were transported by bus to sightseeing and cultural attractions. Id. Vantage Travel claims that all originally scheduled sightseeing and cultural attractions were visited except for a planned organ concert. D. 121 ¶¶ 28-36. Plaintiffs, however, dispute this position, claiming that they did not visit many of the planned sights or that the visits were much shorter than originally planned. D. 118 ¶ 19, D. 102 ¶¶ 28-36.

While the *MS River Voyager* remained in Kitzingen for repairs, Vantage Travel bused Plaintiffs to Vienna, Austria. D. 102 ¶ 33; D. 121 ¶ 33. The bus ride took approximately seven hours. Id. While in Austria, Plaintiffs stayed in standard rooms at the Hilton Vienna hotel for approximately five days. D. 102 ¶¶ 33, 38; D. 121 ¶ 33, 38. At the hotel in Vienna, Plaintiffs were provided a cafeteria style buffet of leftover food. Id. Plaintiffs were also required to pay for their wifi service while staying at the hotel. D. 102 ¶ 38; D. 121 ¶ 38. Once the *MS River Voyager* was

repaired, cruise participants re-boarded the vessel in Budapest, Hungary for the final scheduled evening of the tour, which concluded the following day on July 23, 2016. D. 106 ¶ 20; D. 118 ¶ 20. In a report prepared by the tour director of the cruises after they had concluded, the tours were described as "disastrous." D. 102 ¶¶ 44, 46; D. 121 (not disputing ¶¶ 44, 46).

### E. Vantage Travel's Post-Tour Offers to Plaintiffs

As a result of the problems experienced on the tours, Vantage Travel offered Plaintiffs five hundred dollars per person in travel credits for a future cruise. D. 102 ¶ 42; D. 121 ¶ 42. Vantage Travel also offered Plaintiffs a free river cruise on the River Seine in either November or December 2016. Id. Although the total number of passengers who accepted the free cruise is disputed by the parties, it is undisputed that at least fifteen passengers did so. D. 121 ¶ 42; D. 123 at 2. Vantage Travel did not offer cash refunds to the passengers. D. 102 ¶ 40; D. 121 ¶ 40.

## IV. Procedural History

Plaintiffs instituted this action in Suffolk Superior Court on or about March 7, 2017. D. 1-3 at 2. Vantage Travel removed the action to this Court on May 19, 2017. D. 1. Vantage Travel initially moved to dismiss or, in the alternative, for summary judgment. D. 7. Named Plaintiffs filed a cross-motion to strike portions of a supporting declaration filed by Vantage Travel. D. 14 at 6-7. The Court denied both motions. D. 25. Upon Plaintiffs' motion, D. 39, the Court certified the following class on May 1, 2019: "[a]ll persons who purchased from Vantage [Travel] either the July 2016 'Majestic Rivers of Europe' tour, or the July 2016 'Highlights of the Danube River.'" D. 75 at 6, 15-16 (allowing Plaintiffs' motion to certify Class 1, but denying same as to Class 2). Plaintiffs have now moved for summary judgment as to liability. D. 100. Vantage Travel filed a motion for summary judgment as to all claims. D. 104. In their opposition to Vantage Travel's motion, Plaintiffs have also cross-moved to estop Vantage Travel from disclaiming ownership of

the *MS River Voyager*. D. 115. The Court heard the parties on the pending motions and took these matters under advisement. D. 134.

## V. Discussion

Plaintiffs assert claims against Vantage Travel for breach of contract (Count I); breach of the implied covenant of good faith and fair dealing (Count II); unjust enrichment (Count III); breach of common law warranties (Count IV); negligent misrepresentation (Count V); and violations of the Massachusetts Consumer Protection Act ("Chapter 93A") (Count VII[1]). D. 1-1 ¶¶ 22-46.

### A. Enforceability of the Disclaimer Provision in the TPA

Vantage Travel argues that the Disclaimer Provision of the TPA is an enforceable disclaimer of its liability for, among other things, losses and expenses resulting from a mechanical failure. D. 105 at 6. Plaintiffs appear to argue that the TPA is unenforceable because it is an ambiguous adhesion contract. See D. 111 at 10. Adhesion contracts are "standard form printed contracts prepared by one party and submitted to the other on a 'take it or leave it' basis." Cappellini v. Mellon Mortg. Co., 991 F. Supp. 31, 39 (D. Mass. 1997) (quoting Standard Oil Co. of California v. Perkins, 347 F.2d 379, 383 n.5 (9th Cir. 1965)). As generally applied to all contracts, including adhesion contracts, "the common-law rules of contract interpretation state that a court should construe ambiguous language against the interest of the party that drafted it." Id. (citing Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52 (1995)) (internal quotation marks and emphasis omitted).

The Supreme Court, analyzing the enforceability of a forum-selection clause in an adhesion contract between a cruise provider and passenger, reasoned that a "nonnegotiated" clause was not

---

[1] The complaint does not include a Count VI. D. 1-1 at 6-7.

*per se* unenforceable and determined that the forum-selection clause was not unreasonable based on the context of the case. Carnival Cruise Lines v. Shute, 499 U.S. 585, 593-94 (1991). The First Circuit has similarly held that contracts are not rendered unenforceable simply because they are adhesion contracts. Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 19 (1st Cir. 2009) (stating that "[a]dhesion does not imply nullity of a contract") (quoting Nieves v. Intercontinental Life Ins. Co. of P.R., 964 F.2d 60, 63 (1st Cir. 1992)). Rather, "[i]f the wording of the contract is explicit and its language is clear, its terms and conditions are binding on the parties." Id.

Here, Plaintiffs fail to point to any specific language in the Disclaimer Provision that is ambiguous. The Disclaimer Provision was included in the TPA under a boldface heading of "Responsibilities and Liabilities." D. 107-2 at 16. To the extent that Plaintiffs argue that the TPA is rendered ambiguous based on the representations on Vantage Travel's website that "Vantage" owned and operated the *MS River Voyager*, Plaintiffs fail to cite to any authority for the proposition that Vantage Travel's advertising is incorporated into the TPA as a matter of law.[2] As a result, the terms and conditions of the Disclaimer Provision are enforceable, thus limiting Vantage Travel's liability under the TPA pursuant to its terms.

By its terms, the Disclaimer Provision limits Vantage Travel's liability for acts of third parties, including negligent acts. D. 107-2 at 1. Vantage Travel points to uncontroverted testimony that River Advice AG, a third party, provided the engineers responsible for the maintenance of the vessel and, thus, the mechanical failure that rendered the *MS River Voyager* immobile. See D. 106 ¶¶ 14-18. Plaintiffs contest that River Advice AG is a third party, relying not upon admissible evidence, but only on their assertion that Vantage Travel has failed to provide a contract evidencing

---

[2] The Court, however, later discusses Plaintiff's breach of common law warranties claim, which may rely upon advertisements.

the relationship between it and River Advice AG. <u>See</u> D. 118 ¶¶ 14-18. Such is an insufficient basis for opposing summary judgment. <u>Borges</u>, 605 F.3d at 5. Accordingly, on the uncontroverted record in this regard and applying the language of the Disclaimer Provision, "Vantage is not responsible for any losses or expenses due to delays or changes in schedules, overbooking or downgrading of accommodations, . . . including Suppliers, . . . or other act or event beyond the direct control of Vantage," D. 107-2 at 16, as to all but one of Plaintiffs' claims. Even though the Disclaimer Provision bars Plaintiffs' claims, excluding the Chapter 93A claim (discussed in further detail later), the Court will discuss the merits of each of their claims in the interest of completeness.

**B.      Breach of Contract (Count I) and the Implied Covenant of Good Faith and Fair Dealing (Count II)**

Plaintiffs argue that Vantage Travel breached its contract because it advertised that its cruises were luxury experiences with amenities such as "gourmet meals, balconies with river views in all rooms, private bathrooms, unpack just one [sic], fitness rooms, complimentary ice cream, free Wi-Fi," Plaintiffs paid for the cruises and, after the mechanical failure, Vantage Travel failed to provide the promised amenities. D. 101 at 20. Plaintiffs also argue that Vantage Travel breached the implied covenant of good faith and fair dealing because it failed to "provide Plaintiffs with their reasonable expectation of performance" under the contract. D. 101 at 21-22.

A party suing for breach of contract must establish "(1) the existence of the contract, (2) the plaintiff's willingness to perform or performance, and (3) breach by the defendant; if damages are sought causation and the amount of damages must also be proved." <u>Amicas, Inc. v. GMG Health Sys.</u>, 676 F.3d 227, 231 (1st Cir. 2012). Further, "Massachusetts law implies a covenant of good faith and fair dealing into every contract." <u>South Shore Hellenic Church, Inc. v. Artech Church Interiors, Inc.</u>, 183 F. Supp. 3d 197, 231 (D. Mass. 2016) (citing <u>FAMM Steel, Inc. v. Sovereign Bank</u>, 571 F.3d 93, 100 (1st Cir. 2009)). To demonstrate breach of the implied covenant

of good faith and fair dealing, a plaintiff is not required to show bad faith on the part of the defendant but, rather, "a lack of good faith" such that the defendant does "not purposefully injure" plaintiff's "right to obtain the benefit of the contract." Id. (citing Uno Restaurants Inc. v. Boston Kenmore Realty Corp., 805 N.E.2d at 964 n.5) (internal quotation marks omitted).

The parties do not dispute that the TPA was a valid contract governing the relationship between them. D. 102 ¶¶ 8-10; D. 121. The terms of the contract that Plaintiffs argue Vantage Travel violated are included in advertisements for the *MS River Voyager* and are not terms of the TPA, the contract between the parties. See D. 101 at 20-21. Further, the promises that Plaintiffs claim were breached all relate to the condition of, and Plaintiffs' experience on, the vessel, the *MS River Voyager*. See D. 101 at 20-21 (citing to advertisements stating that the *MS River Voyager* was a "six star" vessel and that its amenities included various luxury features). Plaintiffs have not alleged, however, that the vessel itself failed to live up to these promises. The uncontroverted testimony of Named Plaintiff Ronald Hebert was that the *MS River Voyager* "looked first class" and that it was "exactly like the brochure." D. 120-2 at 12-14. Rather, Plaintiffs argue that the accommodations they received following the mechanical failure, including buses and hotel rooms, were not "luxury" and did not include the amenities that were advertised to be on the *MS River Voyager*. D. 101 at 21. Plaintiffs do not cite, however, to any provisions of the TPA that relate to the quality of these accommodations. See id.

Even putting aside the portion of the Disclaimer Provision which bars the breach of contract claim and Plaintiffs' other non-Chapter 93A claims, other language in the Disclaimer Provision reserves the right for Vantage Travel to modify the travel plans. Specifically, it provides that "[Vantage Travel] reserves the right to modify the itinerary, which right shall include the use

of hotels and motor coaches where necessary." D. 107-2 at 16. On this undisputed record, that is what Vantage Travel did here as they were permitted to do under this provision of the TPA.

For the foregoing reasons, the Court allows Vantage Travel's summary judgment motion as to Counts I and II and denies Plaintiffs' motion for summary judgment as to liability for these counts.

### C.    <u>Unjust Enrichment (Count III)</u>

To establish a claim of unjust enrichment, a plaintiff must establish the following elements: "1) [a] benefit conferred upon the defendant by the plaintiff; 2) [a]n appreciation or knowledge by the defendant of the benefit[] and 3) [t]he acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable (that is, unjust) for the defendant to retain the benefit without payment of its value." <u>Brookridge Funding Corp. v. Aquamarine, Inc.</u>, 675 F. Supp. 2d 227, 234-235 (D. Mass 2009). "The benefit must be *unjust*, a quality that turns on the reasonable expectations of the parties." <u>Id.</u> (quoting <u>Community Builders, Inc. v. Indian Motorcycle Assocs.</u>, 44 Mass. App. Ct. 537, 560 (1998) (emphasis in original)).

Plaintiffs claim that Vantage Travel was unjustly enriched because it retained Plaintiffs' payments for the river cruises and "failed to deliver . . . the luxury experience that was promised." D. 101 at 22. Unjust enrichment, however, is a doctrine of quasi-contract that does not apply where an actual contract controls the parties' rights. <u>Shaulis v. Nordstrom, Inc.</u>, 865 F.3d 1, 16 (1st Cir. 2017) (stating that "Massachusetts law does not permit litigants to override an express contract by arguing unjust enrichment") (internal quotation marks omitted); <u>Verderber v. Perry</u>, 181 F.3d 81 (1st Cir. 1999) (same). This applies even where a plaintiff's breach of contract claim is unsuccessful. <u>Shaulis</u>, 865 F.3d at 16 (noting that "[i]t is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment"). Here, the TPA is a

valid contract that governs the agreement between Plaintiffs and Vantage Travel and as discussed above, the Disclaimer Provision precludes Vantage Travel's liability as to this claim where it arises from actions of third parties and permitted Vantage Travel to provide alternate accommodations in such circumstances. Accordingly, the Court allows Vantage Travel's motion for summary judgment as to Count III and denies Plaintiffs' partial motion for summary judgment liability as to this claim.

### D.      Breach of Common Law Warranties (Count IV)

Plaintiffs allege that Vantage Travel has breached common law warranties because it "promised a luxury experience" and did not deliver on that promise. D. 101 at 23. Plaintiffs also argue that Vantage Travel "expressly promised that it owned and controlled the *MS River Voyager*," which they allege was false. Id. "Under Massachusetts law . . . an express warranty in a contract is a promise of a particular standard of performance, and it imposes on the warrantor an obligation to fulfill the promise made." Sparks v. Fid. Nat'l Title Ins. Co., 294 F.3d 259, 272 (1st Cir. 2002). Advertisements can be express warranties under Massachusetts law. Hannon v. Original Gunite Aquatech Pools, 385 Mass. 813, 822 (1982) (stating "[w]e have no doubt that express warranties can be created by an advertising brochure") (citing Hawkins Constr. Co. v. Matthews Co., 190 Neb. 546, 564-565 (1973)). "To establish a breach of express warranty claim . . . the plaintiff must demonstrate that the express warranty constituted a basis of the bargain between the seller and the buyer." Sebago, Inc. v. Beazer East, Inc., 18 F. Supp. 2d 70, 102 (D. Mass. 1998). "To demonstrate that the express warranty constituted a basis of the bargain, the plaintiff must demonstrate that the buyer relied on the warranty." Id. To establish a breach of warranty claim, a plaintiff, therefore, must "prove that statements or representations made by the

seller induced him to purchase the good and that he relied on those statements or representations." LePage v. E-One, Inc., 4 F. Supp. 3d 298, 312-313 (D. Mass. 2014).

Plaintiffs have not identified any specific statement in Vantage Travel's advertising that they were promising a "luxury experience." Rather, the advertisements detail the amenities and benefits of the *MS River Voyager*. See D. 103-7; 103-9; 103-10. Plaintiffs proffer no evidence that the amenities on the *MS River Voyager* did not comply with the statements in the advertisements. That Plaintiffs were required to disembark from the vessel to travel by bus and stay in a hotel does not render the advertisements about the amenities aboard the *MS River Voyager* untrue and does not support Plaintiffs' claim that Vantage Travel breached an express warranty as to the quality of the *MS River Voyager*. See Chapman v. Bernard's, 167 F. Supp. 2d 406, 414 (D. Mass 2001) (dismissing breach of express warranty claim where plaintiff "failed to produce any evidence of an express warranty regarding the subject [product]").

Plaintiffs also argue that Vantage Travel expressly warranted that it owned and controlled the *MS River Voyager*. Even assuming that any Plaintiff would not have booked the cruise with Vantage Travel if he/she had known that Vantage Travel did not own the vessel, D. 103-26 at 4-6, this case is similar to Sparks in that it is unclear how the alleged express warranty of ownership was the cause of any damage to Plaintiffs. Sparks, 294 F.3d at 272. The First Circuit in Sparks, discussing express warranties that certain entities owned property when they entered into agreements with a broker to sell the property, stated that "[i]n effect, the warrantor proposes to indemnify the warrantee for any damage resulting from a variation between what was promised and what actually came to pass." Sparks, 294 F.3d at 272. The court determined that the defendants were not liable for a breach because the broker could not "prove that any breach of warranty was the cause of any damage to him." Id. The same reasoning applies here as Plaintiffs

have failed to show that the alleged express warranty as to the ownership of the *MS River Voyager* caused the harm they experienced.  See id.  There are no facts in the record indicating that the *MS River Voyager* would not have experienced the mechanical failure or that the passengers would not have been required to take buses to certain sightseeing destinations instead of enjoying the river cruise if Vantage Travel had been the owner of the vessel.  As such (and, for the alternative reason that the Disclaimer Provision precludes Vantage Travel's liability as to this claim as discussed above), the Court allows Vantage Travel's motion for summary judgment as to Count IV and denies Plaintiffs' motion for summary judgment as to liability under Count IV.

### E.      Negligent Misrepresentation (Count V)

Plaintiffs also contend that Vantage Travel negligently misrepresented that it was the owner and operator of the *MS River Voyager* and made misrepresentations concerning the quality of the ship.  D. 101 at 24.  To prove a negligent misrepresentation claim, Plaintiffs must show that Vantage Travel, "(1) in the course of [its] business, or in a transaction in which [it] had a pecuniary interest, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance on the information, and that [it] (6) failed to exercise reasonable care or competence in obtaining or communicating the information."  Elec. Ins. Co. v. Great S. Fin. Corp., No. 14-cv-14172-FDS, 2016 WL 1452338, at *6 (D. Mass. Apr. 13, 2016) (alterations in original) (quoting DeWolfe v. Hingham Centre, Ltd., 464 Mass. 795, 799-800 (2013)).

The statements that Plaintiffs claim were negligent misrepresentations were made in the course of Vantage Travel's business as they were made on the website advertising the cruises to potential customers.  See D. 103-7 (describing the *MS River Voyager* as one of Vantage's ships); D. 103-10 (website page advertising the *MS River Voyager* as "Vantage's Deluxe state-of-the-art

ship").  As previously discussed, the undisputed record indicates that the representations in Vantage Travel's advertisements were not false.  Vantage Travel contends that "there was no representation in any of the trip literature that [Vantage Travel] directly owned the *MS River Voyager*" but, rather, that the vessel was referred to as "Vantage's" and that, in fact, the vessel is owned by "Vantage Services GmbH and HRL River Voyager GmbH," which are "part of the Vantage family of companies."  D. 118 ¶¶ 6-7.

Even assuming, however, that these statements were misrepresentations made without the exercise of reasonable care, as with the warranty claim previously discussed, Plaintiffs have failed to show that the alleged misrepresentations as to the ownership and operation of the *MS River Voyager* caused their loss.  "To be considered a proximate cause of a plaintiff's injury, the representation must be a 'substantial factor' in bringing about the harm." Veilleux v. NBC, 206 F.3d 92, 123-124 (1st Cir. 2000) (quoting Wheeler v. White, 714 A.2d 125, 127-28 (Me. 1998)). "Moreover, the injury must have been a reasonably foreseeable consequence of the representation." Id.  Here, even if any Plaintiff had indicated unequivocally that he/she would not have chosen to travel with Vantage Travel had he/she been aware that Vantage Travel did not own and operated the *MS River Voyager*, Plaintiffs have failed to show that ownership was a substantial factor in bringing about the harm, which resulted from a mechanical failure on the vessel.  Further, there is no indication that the injury suffered would foreseeably result from any confusion as to the owner of the vessel.  As such, Plaintiffs have failed to prove a necessary element of their negligent misrepresentation claim. See Sparks, 294 F.3d at 272-273 (affirming summary judgment in favor of defendants where plaintiff failed to prove that an alleged misrepresentation caused his injury or damages).  Accordingly (and, for the alternative reason that the Disclaimer Provision precludes Vantage Travel's liability as to this claim as discussed above), the Court allows summary

judgment in favor of Vantage Travel as to Count V and denies Plaintiffs' motion for summary judgment as to liability on the same count.

### F.      Defendants Are Not Estopped From Disclaiming Ownership of the *MS River Voyager*

Plaintiffs seek an order estopping Vantage Travel from disclaiming ownership of the *MS River Voyager*.  D. 115.  "Under Massachusetts law, an estoppel claim must assert that (1) a party made a representation intended to induce reliance on the part of a person to whom the representation is made; (2) a person acts in reasonable reliance on the representation; and (3) the party suffers a detriment as a consequence of the act."  Thrivent Fin. ex rel. Lutherans v. Strojny, 882 F. Supp. 2d 260, 269-270 (D. Mass 2012) (internal quotation marks omitted).  "[T]he party asserting the estoppel theory has a heavy burden to prove that all [three] elements are present." Greene v. Ablon, 794 F.3d 133, 143 (1st Cir. 2013) (alteration in original).

Plaintiffs allege that Vantage Travel represented in its advertising that it owned and operated the *MS River Voyager* and other vessels and that Plaintiffs relied upon this representation to their detriment.  D. 116 at 2-8.  As discussed above, Vantage Travel counters that the advertising at issue did not state that "Vantage Travel Service, Inc." owned the *MS River Voyager* and that the representation that "Vantage" owned the vessel was true because the vessel is owned by an entity within the "Vantage group of companies."  D. 125 at 3-4.  Vantage Travel has further explained that it represented the ownership of the *MS River Voyager* as "Vantage" to avoid consumer confusion.  D.  125 at 4 (noting that Vantage Travel's Rule 30(b)(6) witness testified that "[d]etailed recitation of the precise legal entities would not add to customer knowledge and could create confusion").  Plaintiffs have failed to meet their burden to show that Vantage Travel

intended to induce reliance on a representation that it, Vantage Travel Service, Inc., owned and operated the *MS River Voyager*.[3]

Further, Plaintiffs have failed to show that they suffered a detriment as a result of the alleged representation. Plaintiffs argue that the detriment they suffered was that they were "left on a broken down vessel, thousands of miles from home with little or no information concerning their status." D. 116 at 7. Plaintiffs have not shown how their reliance upon Vantage's representations as to the owner of the *MS River Voyager* consequently lead to the detriment they suffered, which occurred as a result of the mechanical failure on the vessel. As a result, Plaintiffs' motion to estop Vantage Travel from disclaiming ownership of the *MS River Voyager* is denied.

### G.  Plaintiffs' 93A Claims (Count VII)

Plaintiffs allege that Vantage Travel has violated Chapter 93A, which prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass Gen L. c. 93A § 2; D. 101 at 5. Plaintiffs argue both that Vantage Travel violated certain regulations that constitute *per se* violations of Chapter 93A and that their actions were "unfair and deceptive" and, therefore, violated the statute. D. 101 at 8-20. As an initial matter, Vantage Travel argues that Plaintiffs' Chapter 93A claims are preempted by the Airline Deregulation Act, 49 U.S.C. § 41713, *et seq.* (the "Deregulation Act"). D. 119 at 6-7.

---

[3] Plaintiffs also cite to <u>Resnick v. Vantage Deluxe World Travel, Inc.</u>, No. 03-cv-1114 (LAK), 2004 WL 2601548, at *1, 3 (S.D.N.Y. 2004), in which Vantage Travel was estopped from disclaiming ownership of another vessel. D. 116 at 1. In <u>Resnick</u>, however, the parties agreed that Vantage Travel be estopped for the purposes of litigation of the issues in that case. <u>Id.</u> That court, therefore, did not analyze whether Vantage Travel should be estopped as a matter of law, which is the issue presented here. <u>Id.</u>

*1.    Preemption*

The Deregulation Act states that no state or political subdivision thereof may "enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation." 49 U.S.C. § 41713(b)(1). The Deregulation Act was enacted "to ensure that the States would not undo federal deregulation with regulation of their own." Morales v. TWA, 504 U.S. 374, 378 (1992).

Under the Deregulation Act, an "air carrier" is defined as "a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation." 49 U.S.C. § 40102(a)(2). Vantage Travel claims that it is an "indirect air carrier" because it "is in the business of booking flight transportation as part of its tour packages" and thus, the Deregulation Act applies to preempt Plaintiffs' Chapter 93A claims related to the sale of travel services. D. 119 at 7-8. Plaintiffs argue that Vantage Travel is not an air carrier, but is a "ticket agent," which is defined as "a person (except an air carrier, a foreign air carrier, or an employee of an air carrier or foreign air carrier) that as a principal or agent sells, offers for sale, negotiates for, or holds itself out as selling, providing, or arranging for, air transportation." D. 111 at 2-3 (quoting 49 U.S.C § 40102 (a)(45)). Vantage Travel, as a tour operator that booked air transportation as part of its tour packages, qualifies as an indirect air carrier under the Airline Deregulation Act.[4] See ABC Charters, Inc. v. Bronson, 591 F. Supp. 2d 1272, 1299 (S. D. Fl. 2008) (collecting cases and stating

_____

[4] As an alternative basis for finding that they are an indirect air carrier, Vantage Travel sought to file Department of Transportation Consent Orders ("Consent Orders") as supplemental authorities. D. 127. Plaintiffs opposed the motion, D. 129, and Vantage Travel moved for leave to file a reply to Plaintiff's opposition, D. 130. The Court allows the motions, D. 127; D. 130, *nunc pro tunc.* The Court considered the motions and briefing but did not rely upon the Consent Orders in agreeing with Vantage Travel, for the reasons stated above, that it is an indirect air carrier under the Deregulation Act.

that "[t]ravel agents, tour operations, shipping and charterers and the like are 'indirect air carriers' covered by the [Airline Deregulation Act]").  Cases analyzing whether entities are indirect air carriers under the Federal Aviation Act, 49 U.S.C. § 1374, have similarly determined that "travel agents, tour operators, and nominal 'social clubs' which in fact publicly sell tours and air transportation are 'indirect air carriers.'"  Arkin v. Trans Int'l Airlines, Inc., 568 F. Supp. 11, 13 (E.D. N. Y. 1982).

It is next necessary to determine whether the claims brought pursuant to Chapter 93A "relate[] to a price, route, or service of an air carrier."  49 U.S.C. §41713(b)(1); see McLaughlin v. TWA Getaway Vacations, 979 F. Supp. 174, 175 (S.D.N.Y. 1997) (analyzing preemption pursuant to the Deregulation Act and stating that "[t]he Supreme Court has broadly interpreted the provisions of the [Deregulation Act] to preempt all actions that are (a) asserted against air carriers and (b) have a connection with or reference to airline rates, routes, or services") (internal quotation marks omitted).  In Morales v. TWA, 504 U.S. 374 (1992), the Supreme Court focused on the "related to" language in the preemption clause of the Deregulation Act in determining that "[s]tate enforcement actions having a connection with, or reference to, airline 'rates, routes, or services' are pre-empted."  Morales, 504 U.S. at 384.  The Court determined that advertising guidelines promulgated by the National Association of Attorneys General were preempted where "every one of the guidelines . . . bears a reference to airfares."  Morales, 504 U.S. at 388 (internal quotation marks omitted).  The Morales Court, however, stated that its holding did not necessarily extend to restrictions that were not related to pricing, even where the restrictions related to airline fare advertising.  Id. at 390 (noting "[n]or need we address whether state regulation of the nonprice

aspects of fare advertising (for example, state laws preventing obscene depictions) would similarly 'relate to' rates; the connection would obviously be far more tenuous").

Following Morales, the Supreme Court determined that claims brought under Illinois's Consumer Fraud Act that challenged an airline's "charges in the form of mileage credits for free tickets and upgrades" and "access to flights and class-of-service upgrades unlimited by retrospectively applied capacity controls and blackout dates" were sufficiently related to the rates and services of the airline and were, therefore, preempted by the Deregulation Act. Am. Airlines v. Wolens, 513 U.S. 219, 226 (1995).

Here, none of Plaintiffs' Chapter 93A claims, which relate to Vantage Travel's advertising of the ownership of the *MS River Voyager*, Vantage's failure to offer Plaintiffs a refund or fair market alternative once the *MS River Voyager* became inoperable, and Vantage's failure to conspicuously identify the Disclaimer Provision of the TPA, relate to the price, route, or service of air transportation. See D. 101 at 8-15. Vantage Travel argues that, because the tours "included an air transportation component," Plaintiffs' claims are preempted by the Deregulation Act. D. 119 at 6. Vantage Travel, however, fails to cite to any case in which a claim premised upon allegations unrelated to the price, route or service of air transportation was preempted by the Deregulation Act simply because air transportation was an element of a travel package. See D. 105 at 16-17; D. 119 at 7-8. The Deregulation Act, therefore, does not preempt Chapter 93A as it relates to the particular claims brought by Plaintiffs here.

As it did in regard to the Plaintiffs' other claims, Vantage Travel also argues that the Disclaimer Provision absolves them of liability even for Plaintiffs' c. 93A claims. See D. 119 at 15-16. Although Massachusetts courts have applied limitation of liability provisions in contracts to waive claims between business entities brought pursuant to section 11 of Chapter 93A, they

have "more than suggested that enforcing a waiver of a consumer plaintiff's claim under a statute such as [Chapter 93A] would be contrary to public policy." See Doe v. Cultural Care, Inc., No. 10-cv-11426-DJC, 2011 WL 1048624, at *8 (D. Mass. Mar. 17, 2011) (citing Anderson v. Comcast, Corp., 500 F.3d 66, 76-77 (1st Cir. 2007); Kristian v. Comcast Corp., 446 F.3d 25, 50 (1st Cir. 2006); Canal Electric Co. v. Westinghouse Electric Corp., 406 Mass. 369, 378 (1990); Feeney v. Dell Inc., 454 Mass. 192, 193 (2009)). Notwithstanding any liability Vantage Travel may or may not have had for the mechanical failure not promptly repaired by a third party pursuant to the terms of the TPA, the Chapter 93A regulations require Vantage Travel, as a tour operator, to offer passengers specific options in the event that they fail to deliver travel services paid for by consumers.

Accordingly, the Court turns to the merits of Plaintiffs' Chapter 93A claims.

2.    *Merits of Plaintiffs' Chapter 93A Claims*

"Chapter 93A . . . is a broad consumer protection statute that provides a private cause of action for a consumer who 'has been injured,' by 'unfair or deceptive acts or practices in the conduct of any trade or commerce.'" Shaulis, 865 F.3d at 6 (quoting Mass. Gen. L. c. 93A §§ 9(1), 2(a)) (internal citations omitted); see Casavant v. Norwegian Cruise Line, Ltd., 460 Mass. 500, 503 (2011). "[A] practice or act will be unfair under [Chapter 93A] if it is (1) within the penumbra of a common law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to competitors or other business people.'" Incase v. Timex Corp., 488 F.3d 46, 57 (1st Cir. 2007) (quoting Morrison v. Toys "R" Us, Inc., 441 Mass. 451 (2004)). "Which acts will be considered 'deceptive' is less clearly defined in the case law . . . [but] some cases have held that an act or practice is deceptive 'if it could reasonably be found to have caused a person to act differently from the way he or she

21

otherwise would have acted.'" Id. (quoting Purity Supreme, Inc. v. Attorney Gen., 380 Mass. 762, 777 (1980)) (internal quotation marks, citation and alterations omitted)). "The statute permits the Massachusetts Attorney General to implement rules and regulations interpreting the provisions of Chapter 93A." McDermott v. Marcus, Errico, Emmer & Brooks, P.C., 775 F.3d 109, 116 (1st Cir. 2014) (citing Mass. Gen. L. c. 93A, § 2(c)) (internal quotation marks omitted)).

Plaintiffs' claim is brought pursuant to Chapter 93A, § 9, which "applies to consumers, individuals who participate 'in commercial transactions on a private, nonprofessional basis.'" John Beaudette, Inc. v. Sentry Ins., 94 F. Supp. 2d 77, 120 (D. Mass. 1999). To establish a Chapter 93A claim "the 'plaintiff must prove causation — that is, the plaintiff is required to prove that the defendant's unfair or deceptive act caused an adverse consequence or loss.'" Doe v. Backpage.com, LLC, 817 F.3d 12, 24 (1st Cir. 2016) (quoting Rhodes v. AIG Domestic Claims, Inc., 461 Mass. 486 (2012)). "This requirement entails showing both 'a causal connection between the deception and the loss and that the loss was foreseeable as a result of the deception.'" Id. (quoting Smith v. Jenkins, 732 F.3d 51, 71 (1st Cir. 2013)).

Plaintiffs allege the following bases for their Chapter 93A claim: (1) that Vantage Travel misrepresented on its website that it owned and operated the *MS River Voyager*, which violated 940 C.M.R. §§ 15.03(2), 15.04(2)(b) & 3.16(2) and was otherwise deceptive, D. 101 at 8-9; (2) that, after the *MS River Voyager* was unable to continue the trip, Defendants failed to offer Plaintiffs their choice of alternatives enumerated under 940 C.M.R. §15.06 and instead distributed a letter to all passengers requiring them to choose one of two restrictive options that required them to waive their rights, D. 101 at 13-15, and (3) that the Disclaimer Provision was not "clear and conspicuous" and was, therefore, "unfair, oppressive and unconscionable" under c. 93A. D. 101 at 15. As an initial matter as to the first two bases of this claim, the regulations provide that a

violation of any provision under 940 C.M.R. § 15.00, which pertains to the travel services industry, shall be a *per se* violation of Chapter 93A. See 940 C.M.R. § 15.01(1); Hiam v. HomeAway.com, Inc., 267 F. Supp. 3d 338, 348 (D. Mass. 2017).

a)  Misrepresentations as to Ownership and Operation of
the *MS River Voyager*

As to the first basis of its Chapter 93A claim, Plaintiffs allege that Vantage Travel "represented and advertised" on its website that it owned and operated the *MS River Voyager* and that this was a false representation in violation of 940 C.M.R. § 15.03(2). D. 101 at 9. This regulation governs the delivery of travel services and prohibits misrepresentations "that ha[ve] the capacity or tendency to deceive or mislead a consumer, or that ha[ve] the effect of deceiving or misleading a consumer, in any material respect." 940 C.M.R. § 15.03(2). Plaintiffs also allege that Vantage Travel's misrepresentations as to ownership and operation of the vessel violate 940 C.M.R. § 3.16. D. 101 at 9. This regulation requires the disclosure of "any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction." D. 101 at 9.

As discussed above, although the parties dispute Vantage Travel's representations about the ownership of the *MS River Voyager*, summary judgment in favor of Vantage Travel is still warranted as Plaintiffs have failed to show that the alleged misrepresentation was the cause of their injury as required by Mass. Gen. L. c. 93A § 9. Smith v. Dorchester Real Estate, Inc., 732 F.3d 51, 71 (1st Cir. 2013) (stating that "when the alleged basis for Chapter 93A liability is a misrepresentation . . . a plaintiff must prove a causal connection between the deception and the loss"). Even as Plaintiffs claim that they have suffered the loss of the luxury travel experience, ee D. 101 at 12, there has been no showing that the alleged misrepresentation as to the vessel's ownership caused this loss.

Plaintiffs also allege that representations as to the ownership and operation of the vessel violated 940 C.M.R. § 15.04(2)(b) because Vantage Travel failed to "provide the name, complete street business address and telephone number of the actual owner and operator of the *MS River Voyager*." Id. Vantage Travel argues that this regulation, which requires disclosure of the name, address and telephone number of "the provider(s) of any travel package being purchased," does not require them to list the information of the owner and operator of the *MS River Voyager*, but that the regulation requires disclosure of the name, address and telephone number of Vantage Travel as the "tour operator." The Court agrees. The regulations define "travel package" as "any combination of travel services offered for sale as a unit, including ocean cruise services." 940 C.M.R. § 15.02. Further, "travel services" is defined as "the provision of transportation by air, sea, or land, or the provision of other goods or services related to recreational, cultural or educational travel, including but not limited to lodging, food, guided tours, or instruction." Id. Based on these definitions, and according the words their usual and ordinary meaning, Amrata v. Target Corp., 480 Mass. 14, 19 (2018), 940 C.M.R. § 15.04(2)(b) required the disclosure of Vantage Travel's name, address, and telephone number as a provider of a travel package and did not require disclosure of the owner and operator of the *MS River Voyager* because the vessel is not a provider of a "travel package." There is no dispute that Vantage Travel disclosed its name, address and phone number and, therefore, Vantage Travel complied with its obligations under this regulation.

b)      Failure to Provide Cash Refund or Substitute of Equal Value

Plaintiffs claim that Vantage Travel is liable under Chapter 93A because it violated 940 C.M.R. § 15.06. D. 101 at 12-13. This regulation requires that, where "a seller of travel services is acting as a tour operator, and the seller fails to provide any of the travel services that a consumer

has purchased directly or indirectly," the seller must offer the consumer their choice of (1) "cash an amount equal to the fair market retail value of any undelivered, purchased travel service," (2) "specially identified substitution travel service of equal or greater fair market retail value for any undelivered, purchased travel service" or (3) "specially identified substitute travel service of lower fair market retail value for any undelivered, purchased travel service, and refund to the consumer in cash an amount equal to the difference in the fair market retail prices of the purchased and the substitute travel services."  940 C.M.R. § 15.06.  Under the regulations, "tour operator" is defined as "a seller of travel services that creates and sells travel packages, either directly to the public or indirectly to the public," thus, the regulation is applicable to Vantage as the tour operator of the river cruises purchased by Plaintiffs.  940 C.M.R. § 15.02.  Further, Defendants admit that they are sellers of travel services and tour operators.  See D. 28 ¶ 4; D. 119 at 7.

Plaintiffs allege that Vantage Travel failed to offer the luxury travel services they had purchased and that they also failed to offer passengers a cash refund, further arguing that the substitute travel service – bus tours during which many of the originally planned sightseeing stops and events were cancelled – were inadequate to satisfy 940 C.M.R. § 15.06.  D. 101 at 13.  Vantage Travel counters that, despite the mechanical failure, they "provided all services advertised for the two tours in question."  D. 119 at 15.

Vantage Travel further argues that they are not liable under 940 C.M.R. § 15.06 because the regulation must be interpreted to apply only to cancellations or modifications that occur prior to the start of the purchased travel service.  D. 119 at 14, n.8.  Vantage Travel cites to no authority for this interpretation.  Id.  Adopting this interpretation would require the Court to improperly read additional language into the regulation that was not included by the Attorney General.  See Lamie v. United States Trustee, 540 U.S. 526, 534 (2004) (stating that "[i]t is well established that when

the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms" (internal quotation marks omitted)); <u>Armata v. Target Corp.</u>, 480 Mass. 14, 19 (2018) (stating that "[w]e interpret a regulation in the same manner as a statute, and according to traditional rules of construction") (citing <u>Warcewicz v. Dep't of Envtl. Prot.</u>, 410 Mass. 548, 550 (1991)).  Vantage Travel further argues that Plaintiffs' theory would require tour operators to compensate passengers whenever any problems arise on a tour.  D. 119 at 15-16.  Vantage Travel's cited cases in support are inapplicable as none addresses a claim brought under Chapter 93A.  <u>See</u> D. 119 at 16.  Further, each of the cases cited relates to tour operators' liability for the health and safety of passengers during travel and not to their liability for a failure to provide travel services that were purchased from them by tour participants.  <u>See</u> <u>id.</u>

Vantage Travel avers that it is not liable under the regulation because it provided passengers with "reasonably equivalent value by visiting all of the sites scheduled on the original itinerary and the passengers being able to stay on the *MS River Voyager* to continue to enjoy its amenities."  D. 119 at 17.  Vantage Travel claims that its offer to passengers of a complimentary cruise down the River Seine and a five hundred-dollar credit for future travel satisfy its obligations under the regulation.  <u>Id.</u>  The regulation, however, makes clear that, in the event that a tour operator fails to provide a purchased travel service, the tour operator must offer passengers their choice of the three options enumerated under the regulation and that they must honor the consumers' choices within thirty days of the consumers' selection.  940 C.M.R. § 15.06.

There is no dispute that Vantage Travel failed to offer passengers their choice of a full refund of undelivered travel services, a travel service of equal or greater value or a travel service of lesser value along with a refund for the difference in value.  Although the parties filed cross-

claims for summary judgment, there still appears to be a dispute as to whether Vantage Travel provided "all services" purchased by Plaintiffs and, if not, which services they failed to provide, which are material facts regarding Vantage Travel's violation of this regulation under Chapter 93A. Compare D. 102 ¶¶ 27-36 (Plaintiff alleging undisputed facts that, following the mechanical failure, the tours failed to visit certain cities and landmarks, provide gourmet meals and provide certain tours and cultural events that were listed in the itinerary) with D. 121 ¶¶ 27-36 (Vantage Travel denying same and indicating that "all major sightseeing and cultural attractions were visited with the exception of an organ concert"). Accordingly, each party's summary judgment motion is denied as it relates to violations of 940 C.M.R. § 15.06.[5]

<blockquote>

c)     The Disclaimer Provision in the TPA Does Not Violate Chapter 93A

</blockquote>

Plaintiffs argue that Vantage Travel is liable under Chapter 93A because the Disclaimer Provision that limited Vantage Travel's liability under the contract was not "clear and conspicuous" and thus was "unfair, oppressive and unconscionable" under Chapter 93A. D. 101 at 15. In support of their claim that the Disclaimer Provision was not clear and conspicuous, Plaintiffs note that Vantage Travel's owner admitted that the contract is written in "very small type." D. 101 at 16. The only case cited by Plaintiffs, Chase Commercial Corp. v. Owen, 32 Mass. App. Ct. 248 (1992), indicates that this basis is insufficient to confer liability on Vantage Travel. See 101 at 15-16; Chase Commercial Corp., 32 Mass. App. Ct. at 253. Chase Commercial Corp., which did not consider a claim brought pursuant to Chapter 93A, analyzed the

---

[5] To the extent that the parties sought to seal certain supplemental submissions of documents under seal, D. 128, 131, the Court ALLOWS those motions to the extent that they sought to file same under seal. Since, however, these documents, D. 128-1, D. 131-1, 131-2, concern the one claim under c. 93A for which there remain disputed facts and/or damages regarding same, see D. 131 at 2, the Court did not rely upon these documents in resolving the pending motions.

unconscionability of a jury waiver provision in an adhesion contract and determined that the provision, which appeared in "clear language" on a three-to-four page contract, was not unconscionable even though it was written in small type. Id. Plaintiffs have failed to show that the Disclaimer Provision in the TPA violated Chapter 93A and their motion for summary judgment as to liability under Chapter 93A based on proper disclosure of the Disclaimer Provision is denied and Vantage Travel's motion for summary judgment as to the same claim is allowed.

**VI.    Conclusion**

For the foregoing reasons, the Court DENIES Plaintiffs' partial motion for summary judgment as to liability as to all Counts. D. 100. The Court ALLOWS Defendants' motion as to Counts I (breach of contract), Count II (breach of the implied covenant of good faith and fair dealing), Count III (unjust enrichment), Count IV (breach of common law warranties) and Count V (negligent misrepresentation). D. 104. The Court further ALLOWS Defendants' motion as to Count VII (claims under Chapter 93A) in part, except insofar as it relates to whether Defendants provided all services purchased by Plaintiffs for the purpose of Plaintiffs' claim that Defendants violated 940 C.M.R. § 15.06 and, thus, violated Chapter 93A. The Court also DENIES Plaintiffs' motion to estop Vantage Travel from disclaiming ownership of the *MS River Voyager*. D. 115.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge