UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONALD HEBERT and AIME DENAULT on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VANTAGE TRAVEL SERVICE, INC. d/b/a VANTAGE DELUXE WORLD TRAVEL and VANTAGE ADVENTURES,<br><br>Defendant. | Case No. 17-cv-10922-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**  June 18, 2021

**I.  Introduction**

Plaintiffs Ronald Hebert and Aime Denault, suing on behalf of themselves and a class of others similarly situated (collectively, "Plaintiffs"), filed suit against Defendant Vantage Travel Service, Inc. d/b/a Vantage Deluxe World Travel and Vantage Adventures ("Vantage Travel") alleging breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, breach of common law warranties, negligent misrepresentation and a violation of the

1

Massachusetts Consumer Protection Act, Mass. Gen. L. c. 93A, §§ 2 and 9 ("Chapter 93A"), related to river cruise travel packages that Plaintiffs purchased from Vantage Travel. D. 1-1.[1]

Vantage Travel has now moved for reconsideration and reversal of the Court's March 12, 2020, Order denying in part its motion for summary judgment ("Summary Judgment Order"), D. 165, for a bench trial on the surviving Chapter 93A claim, D. 167, and to limit Plaintiffs' class, D. 169. For the reasons discussed below, the Court DENIES the motion to reconsider, D. 165, ALLOWS the motion for a bench trial, D. 167, and DENIES the motion to limit the class, D. 169.

## II. Standard of Review

"[A] district court has the inherent power to reconsider its interlocutory orders." Fernández-Vargas v. Pfizer, 522 F.3d 55, 61 n.2 (1st Cir. 2008) (citation omitted). Allowing "a motion for reconsideration is an extraordinary remedy which should be used sparingly," Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (quotation omitted), and is appropriate only "where the movant shows a manifest error of law or newly discovered evidence, or where the district court has misunderstood a party or made an error of apprehension." Villanueva v. United States, 662 F.3d 124, 128 (1st Cir. 2011) (citing Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 81–82 (1st Cir. 2008)). A motion for reconsideration is not to "be used as a vehicle for a party to advance arguments that could and should have been presented to the district court prior to its original ruling." Id.

## III. Procedural History

Plaintiffs instituted this action in Suffolk Superior Court. D. 1-3 at 2. Vantage Travel removed the action to this Court. D. 1. Vantage Travel initially moved to dismiss or, in the

---

[1] The Court incorporates the factual background from its prior Memorandum & Order. D. 147; Hebert v. Vantage Travel Serv., Inc., 444 F. Supp. 3d 233, 240 (D. Mass. 2020).

alternative, for summary judgment. D. 7. Named Plaintiffs filed a cross-motion to strike portions of a supporting declaration filed by Vantage Travel. D. 14 at 6-7. The Court denied both motions. D. 25. The Court certified the following class on May 1, 2019: "All persons who purchased from Vantage [Travel] either the July 2016 'Majestic Rivers of Europe' tour, or the July 2016 'Highlights of the Danube River.'" D. 75 at 6. Plaintiffs moved for summary judgment as to liability. D. 100. Vantage Travel moved for summary judgment as to all claims. D. 104. Plaintiffs also filed a motion to estop Vantage Travel from disclaiming ownership of the cruise ship, the *MS River Voyager*. D. 115. The Court denied Plaintiffs' motions and allowed Vantage Travel's motion on all claims except for part of Plaintiffs' Chapter 93A claim. D. 147. Vantage Travel has now moved for reconsideration and reversal of the Court's summary judgment order to the extent that it did not allow summary judgment as to the remainder of the Chapter 93A claim, D. 165, for a bench trial, D. 167, and to limit the class, D. 169.

## IV. Discussion

### A. Motion for Reconsideration

Plaintiffs' sole remaining claim is that Vantage Travel violated Chapter 93A when it "failed to offer Plaintiffs their choice of alternatives enumerated under 940 C.M.R. §15.06 and instead distributed a letter to all passengers requiring them to choose one of two restrictive options . . . ." See D. 147 at 22. Under 940 C.M.R. § 15.06, a "tour operator" must offer these alternatives when the operator "fails to provide any of the travel services" purchased by consumers. See id. at 24–25 (quoting 940 C.M.R. § 15.06). In turn, 940 C.M.R. § 15.01(1) (collectively, the "Travel Regulations") provides that "violation of any provision under [this section]," like § 15.06, "shall be an unfair or deceptive act or practice, under [Chapter 93A]." 940 C.M.R. § 15.01(1). As the Court explained, "[t]here is no dispute that Vantage Travel failed to offer passengers their choice

3

of a full refund of undelivered travel services, a travel service of equal or greater value or a travel service of lesser value along with a refund for the difference in value [but] there still appears to be a dispute as to whether Vantage Travel provided 'all services' purchased by Plaintiffs and, if not, which services they failed to provide." Id. at 26–27. Accordingly, the Court denied summary judgment on the question of whether Vantage Travel failed to provide "all services." Id. at 27.

Vantage Travel now asserts that the Court erred in denying summary judgment as to the remaining theory of liability under Chapter 93A, arguing (1) that Massachusetts courts and the First Circuit have rejected *per se* violations of Chapter 93A that are based on regulatory violations, (2) that Plaintiffs are required to make a heightened showing of unfair and deceptive conduct, and (3) that the Attorney General exceeded her authority in issuing the Travel Regulations that define certain acts or practices as *per se* unfair or deceptive. See D. 166. As an initial matter, Vantage Travel did not raise any of these arguments in its prior summary judgment briefing. See D. 105 at 15–19. Even assuming these arguments were properly before the Court for reconsideration, however, Vantage Travel's arguments still fail for the reasons discussed below.

First, although the Court overstated same in its Summary Judgment Order, see D. 147 at 23, the issue is not a *per se* violation of Chapter 93A, but whether an act or practice is a *per se* unfair or deceptive based on violation of the regulations. Where, as here, regulations set out that an act or practice is *per se* unfair or deceptive, a plaintiff still must satisfy other elements of the Chapter 93A claim (e.g., causation and injury). See Tyler v. Michaels Stores, Inc., 464 Mass. 492, 503 (2013) (concluding that "violation of the legal right that has created the unfair or deceptive act or practice must cause the consumer some kind of separate, identifiable harm arising from the violation itself"); Ferreira v. Sterling Jewelers, Inc., 130 F. Supp. 3d 471, 478 (D. Mass. 2015) (noting that plaintiff must prove regulatory violation plus injury caused by the unfair or deceptive

4

act); Barron v. NCMIC Ins. Co., No. 17-cv-11969-ADB, 2018 WL 2089357, at *5 (D. Mass. May 4, 2018) (explaining that "[v]iolations of state regulations that constitute *per se* unfair or deceptive practices under Chapter 93A do not, without more, establish injury under Chapter 93A").

Second, when regulations establish *per se* unfair or deceptive acts or practices, plaintiffs need not make an additional showing of unfairness or deceptiveness aside from evidence of the violation itself. See Cranmore v. Wells Fargo Bank, N.A., 410 F. Supp. 3d 336, 341–42 (D. Mass. 2019) (concluding that violation of 209 C.M.R. § 18.22(1) "is *per se* 'an unfair or deceptive act or practice' under Chapter 93A" and rejecting defendants' argument that a Chapter 93A claim requires more than an allegation that action violated regulation, which "explicitly defines a violation of [the regulation] as *per se* 'an unfair or deceptive act or practice' under Chapter 93A"); Craw v. Hometown Am., LLC, No. 18-cv-12149-LTS, 2019 WL 1298588, at *12 (D. Mass. Mar. 21, 2019) (concluding that plaintiffs stated valid Chapter 93A claim when defendants' "policy violated [their] duty to plaintiffs under the Sanitary Code, which violation itself is defined by [940 C.M.R. § 3.17(1)(i)] as an unfair or deceptive act" and plaintiffs alleged economic injuries resulting from the policy); Weinberg v. Grand Circle Travel, LCC, 891 F. Supp. 2d 228, 250 (D. Mass. 2012) (concluding that plaintiffs stated valid Chapter 93A claim based on regulatory violation because "[a] violation of any provision of [940 C.M.R. § 15.00] is an unfair or deceptive practice").

Third, the SJC has held that "the [A]ttorney [G]eneral may make rules and regulations interpreting the provisions of [Chapter 93A]," like 940 C.M.R. § 15.00 that "define[] and outlaw[] certain unfair or deceptive business practices in the sale of travel services to the public. . . ." Casavant v. Norwegian Cruise Line Ltd., 460 Mass. 500, 503–04 (2011). Thus, when regulations define such acts or practices, evidence showing "violations [of the Attorney General's

5

Regulations] qualify as unfair or deceptive acts" as a matter of law. Id. at 504 (reversing trial judge's conclusion that no Chapter 93A violation occurred when evidence at trial showed regulatory violation and remanding for determination of damages). Courts have since applied this precedent in the context of other regulations. See Khan v. Beacon Assocs., Inc., 91 Mass. App. Ct. 1118, 2017 WL 1476261, at *2 & n.4 (2017) (concluding that "landlord's inclusion of [a] late fee provision constituted a *per se* unfair or deceptive act or practice [under 940 C.M.R. § 3.17(3)(a)(1)]" and citing Casavant for proposition that "violation of Attorney General regulation constituted unfair or deceptive act as matter of law"); Henry v. Bozzuto Mgmt. Co., 98 Mass. App. Ct. 690, 701–02 (2020) (citing Casavant for same); see Layes v. RHP Properties, Inc., 95 Mass. App. Ct. 804, 812–13 (2019) (concluding that regulation defining specific conduct for park operators as unfair and deceptive was "clear and unambiguous" and finding violation of regulation to determine liability under Chapter 93A); Clark v. Leisure Woods Ests., Inc., 89 Mass. App. Ct. 87, 94 (2016) (finding that evidence showed noncompliance with regulations and concluding "failure to comply with the regulations amounts to an unfair or deceptive act or practice" as defined by regulation). Moreover, the Attorney General has used her authority under Chapter 93A to define conduct that is "unfair and deceptive" as a matter of law. See Hannon v. Original Gunite Aquatech Pools, Inc., 385 Mass. 813, 820 (1982) (explaining that "Section 2(c) of [Chapter 93A] authorizes the Attorney General . . . to promulgate rules and regulations to facilitate enforcement of [the statute]" including a regulation defining "an unfair and deceptive act or practice"); Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 418 Mass. 737, 746 (1994) (noting same); Adjartey v. Cent. Div. of Hous. Ct. Dep't, 481 Mass. 830, 855 n.12 (2019) (explaining that "the Attorney General has promulgated detailed regulations interpreting [Chapter 93A] in the context of the landlord-tenant relationship" and defining specific "unfair or deceptive acts or practices"); Rental

6

Prop. Mgmt. Servs. v. Hatcher, 479 Mass. 542, 553 (2018) (analyzing same regulations and concluding that, absent other showing, conduct did not violate 93A because it was not defined as unfair and deceptive by Attorney General regulations).

Vantage Travel relies upon cases interpreting a separate regulation—940 C.M.R. § 3.16, not the Travel Regulations at issue here—to argue that Plaintiffs must show more than a mere violation of the Travel Regulations to prove that an act or practice was unfair or deceptive, and that the Attorney General lacks authority to declare certain acts or practices *per se* unfair or deceptive, but those cases were limited to § 3.16, and say nothing about whether violation of a regulation can render an act or practice *per se* unfair or deceptive. See D. 166 at 10–15 (quoting Klairmont v. Gainsboro Restaurant, Inc., 465 Mass. 165, 174 (2013); McDermott v. Marcus, Errico, Emmer & Brooks, P.C., 775 F.3d 109, 120–121 (1st Cir. 2014)). In Klairmont, the SJC held that § 3.16 could not be read to impose *per se* Chapter 93A liability for every act that regulation made unlawful, like any violation of the building code, in part because plaintiffs needed to show that the challenged conduct was unfair or deceptive. Klairmont, 465 Mass. at 173–74. The SJC did not hold that a regulation could not define a specific act or practice as unfair or deceptive. See id. Applying Klairmont, the First Circuit explained in McDermott that the "Attorney General's regulatory authority to 'make rules and regulations interpreting' Chapter 93A . . . does not extend so far as to permit her to allow a plaintiff to show that a defendant has violated an independent statute in lieu of satisfying Chapter 93A's substantive requirements of showing the complained-of act was both unfair and deceptive and that it occurred in trade or commerce." McDermott, 775 F.3d at 120. Within that framework, McDermott held that another provision of § 3.16 could also not impose *per se* Chapter 93A liability but likewise said nothing about whether regulations could define acts or practices as *per se* unfair or deceptive. See id. at 120–22. In citing

7

Klairmont and McDermott for such a broad proposition, Vantage Travel extrapolates holdings specific to *per se* liability under Chapter 93A within 940 C.M.R. § 3.16 to *per se* deceptive acts and practices defined by different regulations. Such a broad reading of Klairmont has been rejected. Specifically, in S. Bos. Elderly Residences, Inc. v. Moynahan, the Appeals Court concluded that "a failure by a landlord to cure a code violation within a reasonable time after notice constitutes a violation of the landlord-tenant regulations that the Attorney General has promulgated pursuant to [her authority under Chapter 93A]," and thus was an unfair or deceptive act or practice. S. Bos. Elderly Residences, Inc. v. Moynahan, 91 Mass. App. Ct. 455, 470 (2017). In so doing, the court rejected the argument that Klairmont "is to the contrary [as] [t]hat case involved a different Attorney General regulation that expansively purported to render any 'act or practice [that] fails to comply with existing [laws] meant for the protection of the public's health, safety, or welfare' a *per se* violation of [Chapter 93A], without further constraining, in any factual way, the 'acts or practices' in question or recognizing a reasonable period to cure the underlying noncompliance." Id. at 470 n.15 (citing Klairmont, 465 Mass. at 173–75).

Finally, Vantage Travel asserts that its conduct cannot be construed as "unfair or deceptive" because of exculpatory terms in its Tour Participation Agreement ("TPA") and because its conduct after the mechanical failure of the cruise ships precludes a finding that it engaged in "unfair or deceptive acts" because it "did everything in its power to provide Plaintiffs with the best experience possible under the rapidly evolving circumstances." D. 166 at 15–18. These arguments are likewise unavailing. First, the Court previously concluded that Plaintiffs cannot waive Chapter 93A claims under the TPA and Vantage Travel has cited no new authority for this proposition. See id.; D. 147 at 21. Second, these arguments ignore the plain language of the Attorney General's regulations, where violation of any regulation within the section "shall be an unfair or deceptive

8

act or practice." 940 C.M.R. § 15.01(1). Given the Court's conclusion above and the language of the Travel Regulations at issue here, whether Vantage Travel's conduct was a violation of Chapter 93A will be determined through resolution of the remaining factual dispute.

Accordingly, Vantage Travel's motion for reconsideration is DENIED.

B.  **Motion for Bench Trial**

Vantage Travel next moves for a bench trial,[2] asserting that Plaintiffs do not have a Seventh Amendment right to a jury trial on the remaining Chapter 93A claim.[3] D. 168 at 7. "The Jury Trial Clause of the Seventh Amendment provides that '[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved.'" Full Spectrum, 858 F.3d at 675 (quoting U.S. Const. amend. VII). Relevant here, the phrase "'suits at common law' refers not only to causes of action that existed in 1791, when the Seventh Amendment was adopted, but also to new causes of action created by statute, as long as those

---

[2] After denying summary judgment on the remaining Chapter 93A claim, D. 147, the Court asked the parties to file a joint statement indicating how they wished to proceed with same, D. 148, to which Plaintiffs continued to request a trial, although neither party addressed the issue of a bench trial versus a jury trial, D. 149. The Court then requested the parties' positions on Vantage Travel's proposed motion to certify a question to the SJC and, if that relief was denied, the parties' position regarding a jury trial versus a bench trial, D. 150. The focus of their filings was on the issue of certifying a question to the SJC, but each addressed the trial issue briefly, D. 151 at 12; D. 152 at 4-5. Without fully addressing the analysis of the issue (which this Court does now in this Memorandum & Order), the Court scheduled a jury trial for January 2021. D. 154. Vantage Travel moved to continue the jury trial due to concerns over COVID-19, D. 157, which the Court took under advisement and asked the parties whether they would consider a remote bench trial. D. 160. The parties then jointly requested to continue the trial until July 2021, further citing COVID-19 concerns as well as their attempts to resolve the dispute by mediation. D. 162. The Court rescheduled trial for July 2021, D. 164, and otherwise stood ready to hold an in-person jury trial, given the change in COVID-19 risks and having conducted an in-person jury trial in April 2021 in another matter. The Court notes that the parties' concerns regarding COVID-19, see D. 157-1, are not pressed now and are not part of the Court's legal analysis regarding the right to a jury trial.

[3] Neither the text of Chapter 93A nor the Massachusetts Constitution provides a jury trial right for Chapter 93A claims, and no other claims remain in this suit to provide that right. See Full Spectrum Software, Inc. v. Forte Automation Sys., Inc., 858 F.3d 666, 677 n.7 (1st Cir. 2017) (citing Nei v. Burley, 388 Mass. 307, 315 (1983)).

9

statutes 'create[ ] legal rights and remedies, enforceable in an action for damages in the ordinary courts of law.'" Id. (quoting Curtis v. Loether, 415 U.S. 189, 192 (1974)). The First Circuit has not "full[y] consider[ed] the extent to which the Seventh Amendment may apply to Chapter 93A claims," but has found one instance where a Chapter 93A claim did satisfy the strictures of the Seventh Amendment. Id. at 678. In Full Spectrum, the court concluded that an undifferentiated Chapter 93A claim (i.e., one that included "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce") "appears to be encompassed by the Seventh Amendment" because it "necessarily encompassed a claim for 'deception,' which does appear to be a claim that is analogous to 18th-century actions at law, such as fraud, deceit, or misrepresentation," but left open the question of whether the Seventh Amendment applies to more specific claims like the one here. See id. at 676 (emphasis in original).

Accordingly, the Court must assess whether Plaintiffs remaining Chapter 93A claim, predicated on a regulatory violation, provides a Seventh Amendment right to a jury trial by applying the following approach: First, a court "compare[s] the new statutory action to 18th-century actions brought in courts of England prior to merger of courts of law and equity . . . to determine whether the new action is analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century. Id. (citations and quotations omitted). Second, and "more important[ly]," a court "examine[s] the remedy sought and determine[s] whether it is legal or equitable in nature." Id.[4]

As to the first factor, Vantage Travel argues that a Chapter 93A claim based solely upon a violation of 940 CMR § 15.06 has no comparable common law cause of action. D. 168 at 7–8.

---

[4] Though not relevant here, if the first two factors "indicate that a party has a jury trial right, [a court] must then determine whether Congress has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder." Id. at 675–76.

10

Plaintiffs counter that their Chapter 93A claim is "analogous to common law claims of deceit and unfairness," relying primarily on the First Circuit's analysis in Full Spectrum. D. 176 at 1–2.

The Court concludes that the first factor weighs in favor of Vantage Travel's argument. As explained above, Full Spectrum was limited to an undifferentiated Chapter 93A claim (i.e., one that encompassed all possible theories of liability and their common law analogues, including deceit and fraud, under the statute). Here, Plaintiffs' remaining claim is that Vantage Travel's failure to offer certain required alternatives violated the Travel Regulations and was therefore unfair or deceptive as a matter of law, not that Vantage Travel engaged in unfair or deceptive acts through deceiving or defrauding them. See D. 147 at 22. Plaintiffs have not identified, nor is the Court aware of, a common law analogue for imposing liability through a regulatory violation. That comports with the overall purpose of Chapter 93A, which "create[ed] 'new substantive rights' and provid[es] relief which is 'in addition to, and not an alternative to, traditional tort . . . remedies.'" Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 778 (1986) (citations omitted). "Consequently, while it is clear that common law actions for fraud and deceit are within the contemplation of an 'unfair act' under the statute, it is equally well established that the definition of the term under [Chapter 93A] goes far beyond the scope of these common law actions." Id. Because Plaintiffs rely solely on a violation of the Travel Regulations, the alleged conduct here does not "fall[ ] within at least the penumbra of some common-law . . . concept of unfairness." Tomasella v. Nestle USA, Inc., 962 F.3d 60, 70–71 (1st Cir. 2020) (citation omitted).

The second factor also weighs in favor of Vantage Travel. Here, Vantage Travel asserts that "all of the remedies contemplated by § 15.06 are equitable, not legal, in nature," like rescission and specific performance. D. 186 at 5; D. 168 at 8. Plaintiffs only address rescission and counter

that because it requires the parties to be returned to the "status quo ante," it cannot occur here where travel services were undelivered. D. 176 at 3.

Because "Chapter 93A allows a litigant to seek both legal and equitable relief," the right to a jury trial flows from the "nature of the remedy" sought. See Frappier v. Countrywide Home Loans, Inc., 750 F.3d 91, 98 (1st Cir. 2014). Here, Plaintiffs' complaint initially sought the following remedies: damages (which they seek to have trebled), restitution, disgorgement, rescission and injunctive relief. D. 1-1 at 8. Some of that requested relief, however, stemmed from claims that are no longer pending in this action, see D. 147, so the Court construes the nature of the remedy sought within the confines of the remaining Chapter 93A claim. As discussed above, Plaintiffs' alleged injury is that Vantage Travel failed to provide them with certain travel services they had purchased, and on this claim their award calculation is "based upon the cash refund options described in [the Travel Regulations]." D. 41 at 4. Thus, Plaintiffs seek a refund. That relief sounds in restitution, which was traditionally considered equitable in nature. See Restatement (Third) of Restitution and Unjust Enrichment § 4 (2011) (quoting Lord Mansfield in Moses v. Macferlan, 2 Burr. 1005, 1008, 1012 (K.B. 1760) (describing action seeking refund, or restitution, as "founded in the equity of the plaintiff's case" where "the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money"); see also Stone v. White, 301 U.S. 532, 534 (1937) (quoting same and collecting cases). Even still, courts today have explained that "restitution is a legal remedy when ordered in a case at law and an equitable remedy . . . when ordered in an equity case . . . [where] 'the basis for [the] claim [is] a duty founded on equitable rather than legal principles,'" like a contract claim. Metro. Life Ins. Co. v. Socia, 16 F. Supp. 2d 66, 72 (D. Mass. 1998) (quoting Reich v. Cont'l Cas. Co., 33 F.3d 754, 755–56 (7th Cir. 1994)). Plaintiffs' sole remaining claim here, although they seek money,

arises not from contract or some other legal claim (which the court addressed as to the first factor), but from an equitable claim for a refund. See FleetBoston Fin. Corp. v. Alt, 668 F. Supp. 2d 274, 276 (D. Mass. 2009) (noting that "a remedy is equitable when a plaintiff seeks restitution for funds . . . held by the defendant that actually belong to the plaintiff"); see also Nei, 388 Mass. at 314–15 (describing legislative history of Chapter 93A and characterizing claims as equitable when statute "create[s] new substantive rights in which conduct heretofore lawful under common and statutory law is now unlawful").

Accordingly, Vantage Travel's motion for a bench trial is ALLOWED.[5]

### C. Motion to Limit Class

Finally, Vantage Travel seeks to exclude 65 class members who accepted and went on a free cruise, which it offered to all 168 class members, in August and September 2016 after mechanical failures occurred on the original cruises in July 2016. D. 170 at 1–2; D. 147 at 5–6.

Vantage Travel first asserts that these 65 class members no longer meet the requirements of Fed. R. Civ. P. Rule 23 as "their claims do not have the same essential characteristics of the claims of the other class members" because any award calculations would be "impossible" given the "individualized assessment" that would be needed (i.e., the extent to which these 65 class members remain injured). D. 170 at 5–6. The essential elements of the Chapter 93A claim for all Plaintiffs, however, remain largely the same: evidence of the regulatory violation to prove an unfair or deceptive act or practice that occurred in trade or commerce, which caused some injury. See Ferreira, 130 F. Supp. 3d at 478. Moreover, Vantage Travel's arguments are, in large part, the

---

[5] Plaintiffs alternatively request an advisory jury on their Chapter 93A claim but offer no support for that contention. See D. 176 at 2. Given the limited nature of the factual dispute to be resolved in this case, and the fact that use of an advisory jury is committed to the discretion of the Court, see Ed Peters Jewelry Co. v. C & J Jewelry Co., 215 F.3d 182, 187 (1st Cir. 2000), Plaintiffs' request is denied.

same as those raised at the class certification stage, which the Court rejected. See D. 75 at 13–14. In particular, the Court noted that "a class may be certified notwithstanding the need to adjudicate individual issues so along as the proposed adjudication will be both 'administratively feasible' and 'protective of defendants' Seventh Amendment and due process rights.'" Id. at 13 (quoting In re Asacol Antitrust Litig., 907 F.3d 42, 52 (1st Cir. 2018)). As relevant here, the Court concluded that it is administratively feasible from Vantage Travel's records to identify class members that accepted a free cruise, and also to discern whether certain class members are uninjured and therefore should be removed from the class at or before trial through "deposition testimony or sworn affidavits regarding the value, nature and adequacy of the compensation offered and accepted by these potential class members." Id. Vantage Travel, however, has yet to offer any testimony or affidavits regarding the value of the free trips in the context of limiting the class and the Court therefore has no basis in the record to determine whether certain class members have been fully compensated and therefore uninjured. See D. 171; D. 187 at 4 (arguing that there is "no need to prove the value of the free cruises that were accepted"). Finally, while award amounts may vary based on whether a class member accepted the free trip, the Court has also rejected this argument as a hurdle to class certification, see D. 75 at 14 (citing DaSilva v. Border Transfer of MA, Inc., 296 F. Supp. 3d 389, 406 (D. Mass. 2017), and Plaintiffs have offered a model for calculating same , which Vantage Travel does not challenge or counter with a calculation of their own, that already accounts for the value of "substitute services," and presumably could account for the value of the free cruise for those class members.[6] D. 175-1 at 8.

---

[6] To the extent that such calculations would pose case-management issues, rather than class conflicts, the Court has broad discretion under Fed. R. Civ. P. 23(d) to create management subclasses for this purpose. See Casale v. Kelly, 257 F.R.D. 396, 408–09, 412 (S.D.N.Y. 2009) (citing Newberg on Class Actions § 7:32 (4th ed.)). Case-management subclasses need not independently meet the requirements of Fed. R. Civ. P. 23(a) or (b). Id.

14

Vantage Travel next asserts that the Court should exclude all 65 class members who accepted a free cruise because at least fifteen of those 65 signed a release form,[7] which they contend "constituted an accord and satisfaction for all claims." D. 170 at 6–9. Plaintiffs counter that Vantage Travel has not met its burden to show accord and satisfaction because there is no clear intention for Plaintiffs to surrender their rights. D. 175 at 4–7.

An "accord is a contract under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing duty. Performance of the accord discharges the original duty." Rest. Consulting Servs., Inc. v. Mountzuris, 253 F. Supp. 2d 45, 52 (D. Mass. 2003) (quoting Restatement (Second) of Contracts § 281). Even assuming that the release form is an accord, see P.L.A.Y., Inc. v. NIKE, Inc., 1 F. Supp. 2d 60, 64 (D. Mass. 1998) (noting that releases are frequently construed as substitute contracts, not accords), the Court sees no language in either the free trip offer-letters or the release forms, that only fifteen individuals appear to have signed, to suggest a clear intention that the free trip would absolve Vantage Travel of its existing duty to Plaintiffs under the original tour. See D. 171-1 (offering free trip as a "token of our gratitude"); Bradford Glen, Inc. v. Capobianco, 62 Mass. App. Ct. 1106, 2004 WL 2340011, at *1 (2004) (explaining that "an accord and satisfaction is unusual and requires a clear and definite indication in the agreement that such is the intention of all concerned," or inferred from a "clear and definite indication of intent"). Further, the releases do not specify what trip the release applies to, instead stating that the customer releases Vantage Travel "of any and all claims and liability related to our tour." See D. 171-4. As the release was signed upon accepting the free trip, "our tour" could be fairly read to apply to this second trip, but Vantage Travel submits no affidavits or other evidence

---

[7] The release states, in relevant part, that the signatory "hereby release[s] [Vantage Travel] of any and all claims and liability related to our tour." D. 171-4.

to clarify whether class members who accepted the trip and signed the releases intended to satisfy any pending or future claims against Vantage Travel related to the July 2016 cruises. See HipSaver Co. v. J.T. Posey Co., 490 F. Supp. 2d 55, 61 (D. Mass. 2007) (noting that "release interpretation turns on the expectations and intentions of the parties at the time of agreement with regard to the future effect of the release").

Accordingly, Vantage Travel's motion to limit the class is DENIED.

## V. Conclusion

For these reasons, the Court DENIES the motion to reconsider, D. 165, ALLOWS the motion for a bench trial, D. 167, and DENIES the motion to limit the class, D. 169.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge